**STATE of Missouri, Respondent,**

v.

**Thomas M. BROWN, Jr., Appellant.**

**No. WD 66219.**

Missouri Court of Appeals,
Western District.

June 26, 2007.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 31, 2007.

Application for Transfer Denied
Sept. 25, 2007.

---

Kent Denzel, Public Defender Office, Columbia, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Shaun Mackelprang and Daniel N. McPherson, Office of Atty. Gen., Jefferson City, for Respondent.

RONALD R. HOLLIGER, Judge.

Thomas Brown, Jr., appeals his conviction following a jury trial for second degree murder and armed criminal action, for which he was sentenced to consecutive terms of fourteen years imprisonment for murder and four years for armed criminal action. He raises three points of trial court error, one of which is dispositive.[1] Brown argues that the trial court abused its discretion in overruling his objection in closing argument, when the assistant prosecutor commented on a defense witness who had testified that the assistant prosecutor had coached a witness. We reverse because the comments went beyond the permissible scope of comments about the credibility of a witness and were "testimo-

---

1. Brown also raises two other points on appeal dealing with discovery violations. We need not address these points, as they will not be an issue in further proceedings.

nial" comments by the prosecutor about her own credibility.

## Procedural History and Statement of Facts

■ Brown was originally charged with first-degree murder and armed criminal action for the death of Anthony Chacon at a Waffle House on Front Street in Kansas City, Missouri. After a mistrial when the first jury could not agree on a charge of second-degree murder, a second jury convicted him of that charge. Brown does not challenge the sufficiency of the evidence supporting his conviction. We review the evidence and all permissible inferences in the light most favorable to the verdict. *State v. Storey*, 901 S.W.2d 886, 891 (Mo. banc 1995).

In the early morning hours of April 8, 2001, Chacon and his friends Mario and Erica Armenta were looking for a place to eat after a night out on the town. As they were driving to a nearby Waffle House, a red truck swerved into Chacon's lane. Brown and his father were in the truck. Chacon became upset and began yelling at Brown and his father. Brown and his father yelled back, and the argument continued until the vehicles reached Front Street. Chacon turned onto Front Street to go to the Waffle House, and the truck continued on in a different direction.

While Mario was in the restroom, Brown and his father entered the restaurant. A witness testified that once Brown's father spotted Chacon and Erica in their booth, he tapped Brown. The two men smiled and walked towards the booth, and an altercation ensued. Brown's father put Chacon in a headlock and pulled him out of the booth. Brown stabbed Chacon with a knife and hit him on the head with a hammer his father had in his belt. Mario heard screaming while he was in the restroom and came out to see Chacon on the floor gasping for air while Brown was stabbing him. Mario grabbed the knife away from Brown, and Brown and his father left. As Brown and his father were leaving, one of them yelled, "next time you will know who to mess with." Chacon died of stab wounds to the chest.

Police recovered a hammer and a knife at the Waffle House. Bloodstains on the blade of the knife were a match to Chacon. Brown's DNA matched skin cells found on the handle of the knife, consistent with him having held the knife handle. Chacon could not be excluded as a minor contributor to skin cells on the knife. Bloodstains found on the hammer were a match to Brown and a possible match to Chacon. Mario's DNA was not found on the knife.

Chacon's stab wounds were consistent with having been inflicted by the type of knife recovered at the Waffle House. He also suffered various cuts and scrapes on his head, left arm and thumb, and right lower leg. One of the scrapes on the left upper arm had a gridlike pattern and shape that was consistent with the head of the hammer recovered at the Waffle House.

## Analysis

■ Brown's theory of defense was self-defense and defense of others (his father). He now complains that the trial court erred when it overruled his objection that a portion of the State's closing argument was improper.

As part of Brown's case-in-chief, he called Russell Fletcher, a Waffle House customer who witnessed the altercation. Fletcher testified that Chacon was sitting in his booth when Brown and his father came in and headed toward the restroom (and also toward the direction of where Chacon and his friends were seated). Fletcher then heard a disturbance and

turned around to see Brown's father hitting Chacon while Chacon was still seated in the booth. He testified that Chacon attempted to stand up and placed his hand on a butter knife to protect himself but that the butter knife never left the table. In his deposition Fletcher had testified that Chacon had stood up and then reached down and grabbed the butter knife. Defense counsel attempted to impeach Fletcher's testimony through his deposition testimony. Defense counsel also asked Fletcher if the assistant prosecutor, Amber Gonzalez, had coached him to say that the butter knife never left the table. Fletcher affirmatively stated that she did not tell him to say that.

The defense then called Brown's aunt, Anita Brown, to testify. Ms. Brown testified that she attended the earlier trial of Brown's father, which was being tried by the same prosecutors who were trying Brown's case. While she was in the courtroom during a break, she heard one assistant prosecutor tell Gonzalez "you know, when they put that knife in Chacon's hands we are in trouble, we are done, we are through." Brown also stated that when she was seated on a bench outside the courtroom during a break, she heard Gonzalez tell Fletcher to say that the butter knife never left the table.

Brown now complains that in closing argument the State was allowed to improperly rebut Ms. Brown's testimony through the equivalent of testimony by the assistant prosecutor who allegedly had suborned perjury by Fletcher. Specifically, Brown contends that the assistant prosecutor's argument amounted to unsworn testimony.

In the State's initial closing argument, Gonzalez talked about witness credibility, and contrasted the State's witnesses, whose stories contained slight variations, with the defense witnesses who repeated the same stories almost word for word. Then the following exchange took place:

MS. GONZALEZ: And defense counsel, after all that, after pretty much having the same story, have the nerve to say that the police and the prosecution told witnesses what to say.

And I want to touch briefly on Mrs. Brown's accusations. The idea that an officer of the court—

MR. PETERS: Your Honor, I object to this. Can we approach.

(Whereupon, counsel approached the Bench and the following proceedings were had:)

MR. PETERS: The state offered no rebuttal to Mrs. Brown's testimony. And Mrs. Gonzalez is now in closing argument attempting to rebut that testimony. She's attempting to elicit in her closing argument her own testimony regarding that and that is incredibly improper.

THE COURT: What did you intend to say?

MS. GONZALEZ: I am not going to say anything about what I may or may not have done. I am going to comment that her accusations are ridiculous. To be very general about it, I am not going to say any—I am not going to use the word I. I think I get to talk to the jury about evaluating her credibility and her testimony.

MR. PETERS: I think it would be improper for an attorney who has been accused of suborning perjury to be allowed to comment on the credibility of that witness in their closing argument. There are two attorneys. If they want to comment on it, Mr. Krantz and if Ms. Gonzalez is allowed to comment on it, I believe I am going to be allowed to comment on it not being rebutting. It opens the door

despite the court's ruling.[2] I have not done it this far, because the court ruled she can't be a witness in the case. If she opens the door, which I think she's already done in the closing argument, I am allowed retaliation that the state didn't call her as a witness. She could have let her not be an attorney on this case.

So, I object to her, the prosecutor accused of suborning perjury testifying in her closing argument about the credibility of the witness. If they want to do it, they have two attorneys.

MS. GONZALEZ: I am not testifying. I am pointing out how ridiculous her testimony was. I am not testifying. I think I am entitled to comment on the credibility and bias.

THE COURT: Overruled.

(Whereupon, the proceedings returned to open court.)

MS. GONZALEZ: The idea that an officer of the court, a prosecutor, would risk a law license, a career, a law degree, years of hard work, on one case is so offensive and completely ridiculous that we ask that you take Mrs. Brown's testimony for what it is worth, which is nothing.

■ "A trial court maintains broad discretion in the control of closing arguments," review of which is for abuse of discretion. *State v. Forrest*, 183 S.W.3d 218, 226 (Mo. banc 2006) (quotation marks omitted). "An argument does not require reversal unless it amounts to prejudicial error." *Id.* (quotation marks omitted). It follows that, "[a] conviction will be reversed for improper argument only if it is established that the complained of comments had a decisive effect on the jury's determination or where the argument is plainly unwarranted." *State v. Petty*, 967 S.W.2d 127, 135 (Mo.App. E.D.1998).

■ "A prosecutor may not argue facts outside the record" because those "assertions of personal knowledge ... are apt to carry much weight against the accused when they should carry none." *Storey*, 901 S.W.2d at 900–01 (internal quotation marks and citations omitted). This is so "because the jury is aware of the prosecutor's duty to serve justice, not just win the case." *Id.* at 901. "The golden thread running though all the cases on this subject is an inquiry into whether the prosecutor's statement of his [or her] belief appears to be based on the evidence which has been introduced before the jury." *State v. Slankard*, 74 S.W.3d 271, 275 (Mo. App. S.D.1999) (quotation marks omitted).

Here the challenged argument that the assistant prosecutor, as an officer of the court, would never risk her career by suborning perjury on the case was improper. The facts she argued were uniquely within the knowledge of Gonzalez. They went beyond a mere comment upon the plausibility of Ms. Brown's testimony. She did not testify and was not subject to cross-examination. This unsworn, untested testimony went to a crucial issue in the case—whether she coached a witness to say that Chacon did not pick up the butter knife first. This testimony effectively rebutted Brown's self defense and defense of third person defenses because if believed it would prove that Chacon was not the initial aggressor. Instead, they improperly touted her own credibility to the jury and implied special knowledge to the jury.

The judgment is reversed and the cause is remanded.

---

**2.** Defense counsel had previously moved to have Gonzalez removed from the case because she might be called as a witness at trial on the allegation that she suborned perjury. The court initially sustained the motion, but later reversed itself.

THOMAS H. NEWTON, Presiding Judge, and HAROLD L. LOWENSTEIN, Judge, concur.