**STATE of Missouri, Respondent,**

v.

**Charles E. CHISM, Appellant.**

**No. WD 67800.**

Missouri Court of Appeals,
Western District.

Feb. 19, 2008.

Rosemary E. Percival, Kansas City, for Appellant.

Shaun J. Mackelprang, Jefferson City, for Respondent.

Before: HAROLD L. LOWENSTEIN, P.J., JOSEPH M. ELLIS, and THOMAS H. NEWTON, JJ.

THOMAS H. NEWTON, Judge.

Mr. Charles E. Chism was convicted by a jury of forcible rape, section 566.030,[1] forcible sodomy, section 566.060, and second-degree domestic assault, section 565.073. Mr. Chism appeals and raises four points. We affirm.

## Factual and Procedural Background

At Mr. Chism's apartment he and the victim, a former girlfriend, had some intimate contact and later she decided to leave. They began to struggle and he raped her. She fled from the apartment partially dressed, banged on a neighbor's door, and screamed for help. She continued to run, but Mr. Chism caught her, beat her on the stairwell, and dragged her by the hair from the stairwell into the apartment. He pulled out some of her hair, and she dropped her garment and a shoe while defending herself. Once inside the apartment he called her a "b* * *h," told her to "suck his d* *k," choked her when she refused, and forced his penis in her mouth.

A neighbor in the apartment called the police after she heard a woman screaming and saw a man beating a woman in the

---

1. Statutory references are to RSMo 2000 un- less otherwise indicated.

stairway. In the stairway area between the floors, the neighbor and the responding police officers noticed shoes, clumps of hair, and underwear on the stairwell. Upon approaching the apartment, the police officers heard an angry male voice say, "suck my d* *k, b* * *h." They knocked on the door, and the victim fled and told the officers to "get him." The officers observed cuts and scrapes on her face and neck. She told the officers that he injured, raped, and sodomized her. Additionally, she told them that she was the woman the neighbor saw being beaten and that Mr. Chism was the perpetrator. Mr. Chism was arrested and charged with forcible rape, forcible sodomy, first-degree domestic assault, and second-degree domestic assault.

At a jury trial, the State presented testimony from the treating physician, the neighbor, one of the police officers, and the victim. Mr. Chism testified that he was quarreling with the victim earlier in the evening and that they were engaging in consensual sex when the police arrived. He also claimed that he said, "You're a crazy b* * *h" around the time the police officers knocked on the apartment door.

The jury convicted him of all charges except for first-degree domestic assault. Instead, the jurors convicted him of the lesser-included charge of second-degree domestic assault. Mr. Chism filed a motion for new trial challenging the admissibility of Mr. Chism's prior uncharged misconduct. The motion was denied, and Mr. Chism was sentenced as a prior felony offender to two concurrent fifteen-year terms for the forcible rape and forcible sodomy to run consecutively with two concurrent seven-year terms for the two counts of second-degree domestic assault. Mr. Chism raises four points on appeal.

In his first point, Mr. Chism argues that the trial court plainly erred in allowing the State to present testimony from the examining doctor that "he believed [the former girlfriend]'s account that she [had been] raped, sodomized and assaulted." In his second point, he argues that the trial court abused its discretion in allowing the State to adduce detailed testimony from the victim about a previous occasion when Mr. Chism allegedly choked her in anger. In his third and fourth points, Mr. Chism argues that the trial court plainly erred in failing to intervene *sua sponte* during the State's closing argument when the prosecutor defined an element for the jury; proposed to the jury that it had to believe all of the State's witnesses were liars to find in Mr. Chism's favor; and stated that the police officers would not lie for the State and jeopardize their jobs.

### Standard of Review

The admission of evidence is within the trial court's discretion. *State v. Tyra*, 153 S.W.3d 341, 345 (Mo.App. S.D. 2005). We will reverse the decision if the trial court abuses its discretion and the defendant is thereby prejudiced. *Id.* A trial court abuses its discretion when the decision is against the logic of the circumstances and when "it is so arbitrary and unreasonable as to shock the sense of justice and indicate[s] a lack of careful consideration." *Id.*

### Legal Analysis

In his first point, Mr. Chism argues that the trial court plainly erred in admitting the doctor's testimony that he believed the victim's account of what occurred in the apartment because it was improper vouching. Expert testimony shall not usurp the jury's province in determining the credibility of witnesses. *State v. Churchill*, 98 S.W.3d 536, 538–39 (Mo. banc 2003). Expert testimony that comments directly on a witness's credibility invades the jury's province and is inad-

missible. *Id.* Expert testimony, however, that comments on how a victim's behavior relates to general behavior of someone who has been sexually abused is admissible. *Id.* at 539.

 Although admission of evidence is reviewed for an abuse of discretion, we review this issue for plain error because it was not included in the motion for new trial. Rule 30.20; *see* Rule 29.11(d). Plain error review is a two-step analysis. *State v. Beggs*, 186 S.W.3d 306, 311 (Mo.App. W.D.2005). First, we determine whether the error is plain, and second, we determine whether manifest injustice or miscarriage of justice would result if the error is left uncorrected. *Id.* Plain error is that which is evident, obvious, and affects substantial rights of the defendant. *Id.*

At trial, the doctor testified that he found no injuries to the victim's genital area after performing a rape kit on the victim. He also testified, "I have seen reported sexual assaults and consensual sex that have both resulted in and not resulted in trauma." Defense counsel asked the doctor if he had any way of knowing whether the victim was raped. To which the doctor replied, "No. By the evaluation I had at the time and by the evidence that I had collected at the time, no." On redirect examination, the prosecutor asked the doctor if he had any reason to believe that in fact she had not been raped. Defense counsel objected, but the trial court overruled it. The doctor replied, "By my evaluation at the time, my indications were that, was to believe her history."

On recross-examination, the following colloquy occurred between Defense counsel and the doctor:

Q: And with regard to the rape, you had no measurable objective evidence of a rape, right?

A: That is correct.

Q: No scientific evidence of rape?

A. Not that I had available at the time that I evaluated her, no.

Q. Right, and so your evaluation that you just provided is based on belief?

A. It's—yes. Of what she stated and the evaluation that I observed at the time that I examined her.

Q. But you, basically that you believe her story. Is that what you're saying?

A. Yes.

Q. Now, as you may have discovered in your medical practice, that [patients may have lied] on occasion; is that correct?

. . . .

A. Every once in a while that does occur.

Q. But you still hold onto the belief that you can always tell when your patients are lying to you?

A. For me to do my job, I have to take them at their word. During the evaluation and the examination, I use my background and my experiences to try to get the truth or the real story of what exactly happened.

Q. But you never know for sure.

A. I never know for sure.

Q. And in this case, you don't know for sure?

A. In this case, no.

Q. And you're not a lie detector?

A. No.

Q. And there's no scientific verifiable evidence to back up your belief?

A. Of the—

Q. With regard to the rape claim?

A. With regard to the sexual assault, no.

Q. Thank you.

The above testimony does vouch for the victim's credibility because the doctor testified that he believed that she was sexually assaulted. As Mr. Chism correctly

stresses, the doctor should have only testified to the physical injuries that were consistent with rape and not whether he believed the history that the victim provided him. Nevertheless, Mr. Chism did not suffer a manifest injustice.

Mr. Chism argues that the vouching caused him to suffer a manifest injustice because the case hinged on credibility since there was no evidence of forcible rape or sodomy or witnesses to the charged events; he relies on *Churchill* and *State v. Williams*, 858 S.W.2d 796, 800 (Mo.App. E.D.1993). The *Churchill* court found the particularized testimony prejudiced Mr. Churchill because the vouching bolstered the child-victim's inconsistent statements and her subsequent behavior, which were the only other State's evidence; there was no physical evidence indicating sexual abuse had occurred. 98 S.W.3d at 538–39. Likewise, the *Williams* court found a manifest injustice from the doctor's vouching for the victim because the State relied on the victim's testimony to prove its case and emphasized the doctor's testimony in its closing argument. 858 S.W.2d at 801.

Mr. Chism argues that the doctor's vouching "amounted to an impressively qualified stamp of truthfulness" of her story, quoting from *Williams*, 858 S.W.2d at 801, and resulted in a manifest injustice because, similar to *Churchill* and *Williams*, the case hinged on the victim's credibility since there were no witnesses to the incident and no physical evidence of forcible rape or sodomy. Similarly in this case, no physical evidence of the rape existed; but unlike in *Churchill* and *Williams*, the State adduced other evidence that corroborated the victim's story. The State's evidence included eyewitness testimony that a woman was being beaten on the stairwell; the police officer's observations of the panty, clump of hair, and a sneaker on the stairs; and the police offi-

cer hearing Mr. Chism's angry statements. As the State correctly points out, the presence of the corroborating evidence rather than the doctor's improper bolstering persuaded the jury to believe the victim. *See State v. Collins*, 163 S.W.3d 614, 623 (Mo. App. S.D.2005) (holding vouching harmless error where the victim's allegation was corroborated with other evidence). Mr. Chism's first point is denied.

 In his second point, Mr. Chism argues that the trial court abused its discretion in allowing the State to adduce from the victim that he choked her on a previous occasion because it was prior uncharged misconduct with no logical or legal relevancy. Prior uncharged misconduct is inadmissible for showing a defendant's propensity to commit similar crimes. *State v. Ellison*, 239 S.W.3d 603, 608 (Mo. banc 2007). The fear is that the jury will convict a defendant of the uncharged misconduct, which would violate a defendant's right to be tried only for the crime charged. *See Tyra*, 153 S.W.3d at 347. Uncharged misconduct is admissible, however, to show alternative evidentiary purposes such as a motive, intent, the absence of mistake or accident, a common plan or scheme, or identity, but only if the evidence is legally and logically relevant. *Ellison*, 239 S.W.3d at 607. Evidence is logically relevant when it has some legitimate tendency to establish clearly the defendant's guilt for the crime charged and is legally relevant when the probative value outweighs the prejudicial effect. *State v. Burns*, 978 S.W.2d 759, 760 (Mo. banc 1998). We review the admission of the evidence for an abuse of discretion because it was raised in the motion for new trial.

At trial, the State argued that the uncharged misconduct was both logically and legally relevant to show Mr. Chism's animus towards the victim, to show his motive and intent, and to show the victim's state

of mind. Mr. Chism argued that it was propensity evidence with no legal or logical relevance. The trial court allowed the testimony since the State had to prove Mr. Chism acted intentionally to assault her thereby counteracting Mr. Chism's defense that the sexual acts were consensual and not done with the intent to harm. The victim testified that a month prior to the incident while they were still dating, Mr. Chism became angry with her and choked her with his hands because she would not turn off the television so that he could get some sleep. No other testimony about the occurrence of similar incidents was given. In fact, the victim stated that Mr. Chism was only physically violent that one time during her ten to eleven month relationship with him.

 Prior evidence of a similar level and type of abuse may logically show that a defendant intended to harm the victim. *State v. Wallace*, 943 S.W.2d 721, 724 (Mo.App. W.D.1997). However, this court has found against legal relevance when intent is not a legitimate issue in the case. *Id.* at 724–25. The *Wallace* court stated that "[w]here,[as in this case], the State presents direct evidence that the defendant committed the act charged, the proof of the act ordinarily gives rise to an inference of the required *mens rea.*" *Id.* at 725. (internal quotation marks omitted). Thus, unless the defendant challenges the intent element the probative value of such evidence is minimal, while the prejudicial effect is substantial. *Id.* The denial of the act does not make intent an issue simply because it is an element of the charge. *See id.* at 724. Intent becomes an issue when the defendant claims his actions were accidental or in self-defense. *Id.* Because Mr. Chism did not claim that his actions were accidental or the cause of consensual acts, the prejudicial effect of the evidence outweighed the probative value. Thus, the trial court abused its discretion in admitting the evidence because it was not legally relevant.

 This court will not reverse for harmless error; so we must decide if the erroneous admission of the evidence prejudiced Mr. Chism such that he was deprived of a fair trial. *State v. Blakey*, 203 S.W.3d 806, 814 (Mo.App. S.D.2006). "[T]he test for prejudice is whether the improper admission was outcome-determinative." *Id.* (internal quotation marks omitted) "A finding of outcome-determinative prejudice expresses a judicial conclusion that the erroneously admitted evidence so influenced the jury that, when considered with and balanced against all evidence properly admitted, there is a reasonable probability that the jury would have [reached a different conclusion] but for the erroneously admitted evidence." *Id.* (internal quotation marks omitted). In determining prejudice, this court considers the amount of the erroneously admitted evidence and "the extent to which the evidence was [referenced] during the trial." *Id.* at 815 (internal quotation marks omitted). When the inadmissible evidence is substantial and there are several references to the inadmissible evidence, prejudice is found. *See id.*

In this case, the victim's testimony was the only evidence of Mr. Chism's uncharged misconduct and the State made no reference to it during closing arguments. Mr. Chism argues that he was prejudiced because the victim's testimony was the only evidence that Mr. Chism choked her. Although a prior incident of choking poses a risk that the jury would believe he had the propensity to choke when angered, it is unlikely that this evidence influenced the jurors to create a reasonable probability that the jury would have acquitted but for its admission. As stated in the earlier discussion, the victim's testimony was corroborated with physical evidence and wit-

nesses. Mr. Chism's second point is denied.

▆ In Mr. Chism's third point, he argues that the trial court should have told the jury to disregard the prosecutor's explanation of a reckless act during closing argument because it was a misstatement of the law. He claims that the State "misled the jury to believe that reckless conduct was conduct that was done unintentionally and that if Mr. Chism either intended or knew what he was doing, he could not be acting recklessly and hence was guilty of second-degree domestic assault rather than third-degree." This issue was not raised in the motion for new trial so it will be reviewed for plain error.

▆ A misstatement of the law during closing argument is impermissible, and the trial court has the duty to restrain such arguments. *State v. Johnson*, 182 S.W.3d 667, 670 (Mo.App. E.D.2005). Improper closing arguments that are reviewed under plain error will not constitute reversible error unless the improper remark affected the verdict such that it had a decisive effect on the outcome of the trial. *Id.* at 671. A decisive effect is shown when there is a reasonable probability that the verdict would have been different in the absence of the argument. *Id.* Usually, misstatements of the law are not deemed reversible error when the proper law is given to the jury because we assume the jury followed the law as stated in the instructions. *See id.*

During closing argument, the State made the following comments about the instructions to the jury:

> Lastly, then you also have domestic assault in the third degree. And the language for that is that the defendant recklessly caused physical injury to [the victim] by biting her, all right. So again, in this domestic assault third degree, the difference is that it was a reckless act. Well, what does a reckless act mean? It's defined for you. [The legal definition of reckless act is read to the jury]. It's kind of confusing, . . . . Essentially, this means he didn't intend to do it, he didn't knowingly bite her about her face. Now, we all heard the evidence. We know that he intended to bite her all over her face.

Section 562.016.4 defines reckless as "consciously disregard[ing] a substantial and unjustifiable risk that circumstances exist or that a result will follow, and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation." *State v. Thomas*, 161 S.W.3d 377, 381 (Mo. banc 2005). The Missouri Supreme Court has interpreted this section to include a person acting intentionally in conscious disregard for the substantial and unjustifiable risk. *See id.* (finding defendant intentionally jerked the knife but did so "in conscious disregard for the substantial and unjustifiable risk that death would result and in gross deviation from what a reasonable person would have done"). The *Thomas* court specifically found that the self-defense instruction was not applicable but still found the involuntary manslaughter instruction should have been given since the defendant's actions could support an inference of acting recklessly. *Id.* Thus, the prosecutor's comment that if the jury believed Mr. Chism acted knowingly, it could not believe he acted recklessly, was a misstatement of the law. Nevertheless, the proper definition was given to the jury in the submitted instructions, and we assume the jury followed that instruction and the one stating that closing arguments are not the law.

Mr. Chism argues that providing the proper definition to the jury did not correct the misstatement of the law because the prosecutor's comments encouraged the jury to disregard the instructions given to

them. We disagree. The comment was an explanation of the definition rather than a command to the jurors to disregard the instruction. Thus, Mr. Chism's third point is denied.

In Mr. Chism's fourth and final point, he continues to challenge the propriety of the State's closing argument on three additional grounds. First, he argues that the trial court should have intervened *sua sponte* when the prosecutor stated that Mr. Chism was charged with knowingly biting the victim because the prosecutor's office believed that his conduct constituted knowing actions, because it amounted to improper vouching for the strength of its case. Second, he argues that the trial court should have intervened *sua sponte* when the prosecutor stated that the officer and crime scene technician would not risk their careers and reputation, because it amounted to vouching for the witnesses' credibility. Third, he argues the trial court should have intervened *sua sponte* when the prosecutor told the jury they had to believe all the State's witnesses were lying to find in Mr. Chism's favor. These issues were not raised in the motion for new trial so each one will be reviewed for plain error.

 As previously mentioned, improper closing arguments amount to plain error when the defendant shows that the improper comment had a decisive effect on the verdict. *State v. Newlon*, 627 S.W.2d 606, 616 (Mo. banc 1982). Prosecutors can comment on the guilt of a defendant when the opinion is based on the evidence. *State v. Tokar*, 918 S.W.2d 753, 769 (Mo. banc 1996). During closing arguments, the prosecutor stated:

Now, the State has charged [Mr. Chism] with this domestic assault in the first degree because that's what we believe his conduct is.... Now we all heard the evidence. We know that he intended to bite her all over her face.

. . . .

Again, the State has charged him with domestic assault in the second degree because we believe that this was a knowing crime.... Again, the State believes from the evidence that this is a knowing crime.

Mr. Chism claims that these comments implied knowledge about facts pointing to the defendant's guilt, which were not in evidence. The State is not allowed to suggest that its belief of defendant's guilt is based on evidence not before the jury. *State v. Wolfe*, 13 S.W.3d 248, 256 (Mo. banc 2000).

 In this case, the prosecutor's comments did not imply that it based the belief of defendant's guilt on any outside facts. In context, the statement simply meant the evidence shows that Mr. Chism intended to bite her. Thus, there was no improper vouching for the strength of the State's case.

 In regard to the allegation that the State vouched for its witnesses, the relevant statements made during closing arguments are:

You have to believe Officer Reineke is a liar. That [this] man risked his career and his reputation to lie about what he heard outside of an apartment.... He would risk his career and lie about that.

. . . .

You have to believe that Ben Simmons would risk his career and his reputation to lie to you.

Mr. Chism claims that this was improper because there was no evidence that the officer or the technician would face any consequences with their employers for lying on the stand. Thus, the argument "amounted to unsworn, untested testimony on the crucial issue of which version of the facts the jury should believe." Mr. Chism relies on cases from several foreign juris-

dictions and *State v. Brown*, 231 S.W.3d 268 (Mo.App. W.D.2007), to support his argument.

■■■ A prosecutor is allowed to comment on the witnesses' credibility during closing argument. *State v. McClain*, 824 S.W.2d 103, 106 (Mo.App. E.D.1992). In *Brown*, the prosecutor, during closing argument, stated that she would not throw her career away by suborning perjury. 231 S.W.3d at 272. The comment was in rebuttal to defendant's witness stating she overheard the prosecutor tell the eyewitness to change a crucial fact in his story, which was offered to explain the variation in his trial testimony from his deposition testimony. *Id.* The State chose not to call the prosecutor to deny the allegations. *Id.* at 271. Mr. Brown argued that the prosecutor's comments amounted to unsworn testimony. *See id.* The *Brown* court agreed, stating the prosecutor's statement "went beyond a mere comment upon the plausibility of Ms. Brown's testimony" because the statement went to the issue of whether the prosecutor coached a crucial witness to Mr. Brown's self-defense claim, and implicated "facts ... uniquely within [the prosecutor's] knowledge." *Id.* at 272. Thus, the *Brown* case is inapposite because the prosecutor's statements here did not rebut Mr. Chism's defense. Nor did those statements suggest that the prosecutor had extra-judicial knowledge of any relevant issue.

Missouri courts have upheld arguments about police officers' credibility. *See State v. Bryant*, 741 S.W.2d 797, 799 (Mo.App. E.D.1987); *State v. Harrelson*, 636 S.W.2d 83, 86 (Mo.App. E.D.1982). In *Bryant*, the prosecutor argued that the police officers, who testified for the State, would not lie because "they would not do that to themselves, the people of Florissant or the victim." 741 S.W.2d at 799. The statement was made in rebuttal to defendant's accusation in closing argument attacking the

officers' testimony. *Id.* The *Bryant* court held that the statements were within the permissible bounds of commenting on a witness's credibility. *Id.*

Clearly in this case, the prosecutor was making comments about the credibility of the witnesses, and, although no evidence was presented about the consequences the two witnesses would face for lying, the comments did not amount to unsworn testimony because, unlike in *Brown*, the testimony of the officer and the crime scene technician was not crucial to Mr. Chism's defense. Mr. Chism did not state that they were lying or try to reconcile their testimony with his story.

■■■ Turning to Mr. Chism's final contention in his last point, the relevant statements from the rebuttal closing argument are:

And the defendant's story, ladies and gentlemen, if you believe what the defendant said on the stand today, then you have to believe that Sara Johnson is a liar.

. . . .

You have to believe Officer Reineke is a liar. That that man risked his career and his reputation to lie about what he heard outside of an apartment.

. . . .

You have to believe that Ben Simmons would risk his career and his reputation to lie to you.

Mr. Chism argues that this all or nothing approach was inappropriate. Mr. Chism argues that the comment precluded the jury from considering that the witnesses could have been mistaken as to what they had heard or seen. This court found no error in allowing a prosecutor to argue to a jury during rebuttal closing arguments that the jurors would have to say to the witnesses "you are all lying, folks" to find the defendant not guilty. *See McClain*,

824 S.W.2d at 106. Although the defense was not given an opportunity to rebut these particular statements, the defense should have anticipated this argument because the prosecutor attempted to make the same point during its cross-examination of Mr. Chism. Mr. Chism could have informed the jurors that the defense held the position that the witnesses' accounts were mistakes rather than lies but did not do so. Therefore, the trial court did not err in failing to *sua sponte* intervene during the State's closing argument.

For the foregoing reasons, we affirm.

HAROLD L. LOWENSTEIN, P.J., JOSEPH M. ELLIS, J. concur.