

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| | ) | |
| Respondent, | ) | WD85500 |
| v. | ) | |
| | ) | OPINION FILED: |
| | ) | December 12, 2023 |
| CALEB T. BELLAMY, | ) | |
| | ) | |
| Appellant. | ) | |

**Appeal from the Circuit Court of Clay County, Missouri**
**The Honorable Shane T. Alexander, Judge**

**Before Division Three:** Lisa White Hardwick, Presiding Judge, and
Karen King Mitchell and Cynthia L. Martin, Judges

Caleb Bellamy appeals his conviction for second-degree rape, § 566.031,[1] for

which he was sentenced to seven years' imprisonment. He raises four points on appeal.

First, he argues the trial court abused its discretion by failing to intervene when the State

criticized defense counsel during the State's rebuttal argument. Second, Bellamy asserts

the court plainly erred by failing to give a curative instruction when the State misstated

the elements of second-degree rape during its closing argument. Third, he claims the

court abused its discretion by overruling defense counsel's objection to a question posed

---

[1] All statutory references are to the Revised Statutes of Missouri, 2018 Supp.

by the State during its redirect examination of M.T. (Victim).  Lastly, Bellamy contends the court abused its discretion by refusing his properly proffered instruction on the lesser-included offense of second-degree sexual abuse.  Finding no error, we affirm.

## Background[2]

On February 2, 2020, Bellamy was charged by information with second-degree rape, a class D felony.  At trial, Victim testified as follows.  She and Bellamy were childhood friends.  They dated briefly and had sexual intercourse once when Victim was fifteen years old.  Seven or eight years later, Victim, Bellamy, Bellamy's aunt, and their respective dates, met for drinks one night.  After that, Victim did not see Bellamy again for roughly ten years.

On February 9, 2019, Victim was home alone when she saw an Instagram post from Bellamy, and she contacted him to catch up.  Bellamy invited Victim out; she declined and, instead, invited Bellamy to her house before he went out for the evening.  Bellamy arrived at Victim's house around 5:30 p.m. with a six-pack of beer and a fifth of vodka.  Bellamy and Victim spent the evening watching Netflix and talking, with Victim in her recliner and Bellamy on the couch.  Nothing romantic occurred or was discussed.

While at Victim's house, Bellamy drank all the beer and more than half the vodka; he was visibly impaired.  Victim had two shots of bourbon.  Victim also smoked marijuana, taking a couple of puffs on a pen every thirty minutes or so throughout the

---

[2] "We view the evidence in the light most favorable to the jury's verdict[], disregarding all contrary evidence and inferences."  *State v. Fox*, 658 S.W.3d 186, 189 n.2 (Mo. App. W.D. 2022) (quoting *State v. Jackson*, 636 S.W.3d 908, 913 n.1 (Mo. App. W.D. 2021)).

2

evening; she was high, but her decision-making and her memory of events were not impaired. Bellamy also took two or three hits off the pen.

Around 11:00 or 11:30 p.m., Victim said she was going to bed. She told Bellamy he could stay or get a ride home. Victim went into her bedroom, closed the door, and changed into her pajamas. Bellamy knocked on the bedroom door and asked whether Victim had anything he could wear to bed; she gave him a pair of athletic shorts. Victim then went into the bathroom while Bellamy changed into the shorts. Victim returned to her bedroom and got into bed.

Bellamy got into the other side of Victim's bed, but she was not concerned because he was her childhood friend; she testified, "I mean, when we were little, we used to sleep in the same bed, snuggle on the couch, you know, like—we were good friends." Then Bellamy started rubbing the back of Victim's arm and her lower back with his hand. She swatted his hand away and told him to stop. She also rolled onto her stomach, closer to the edge of the bed and away from Bellamy. Again he rubbed her arm and back, and again she swatted his hand and told him to stop. Then Bellamy straddled Victim and tried to pull her pajama pants and underwear down; she yanked them back up and told him to stop and to get off of her. But, instead, he ripped her pants and underwear and "jammed" his penis into her vagina. She yelled "Ouch," and then went numb. Bellamy ejaculated in Victim's vagina, then rolled over and fell asleep. The next morning, Victim confronted Bellamy, who denied any physical contact.

When Bellamy left, Victim called her best friend (Friend). Friend testified that Victim was crying hysterically when she called him. According to Friend, Victim was

3

confused about why Bellamy would rape her, but she was not confused about the details of the assault. Friend took Victim to North Kansas City Hospital where she was interviewed and examined by a sexual abuse nurse examiner (SANE nurse) who took photographs and collected samples. The SANE nurse testified that Victim showed signs of recent vaginal tearing. A DNA analyst with the Kansas City Police Crime Laboratory testified that Bellamy was the likely contributor of male DNA detected in a vaginal swab collected from Victim.

The jury found Bellamy guilty of second-degree rape. He waived jury sentencing, and the court sentenced him to seven years' imprisonment. This appeal follows. Additional facts will be provided in the analysis, as necessary, to address Bellamy's points on appeal.

## Analysis

Bellamy raises four points on appeal. The first two points allege error related to the State's rebuttal argument, and the third point alleges error in overruling defense counsel's objection to the State's questioning of Victim. Bellamy's fourth point contends the court abused its discretion by refusing his properly proffered instruction on the lesser-included offense of second-degree sexual abuse. We address each of his points in turn.

### I. The trial court did not err by failing to intervene when the State criticized defense counsel during the State's rebuttal argument.

For his first point, Bellamy claims the trial court abused its discretion by failing to intervene and give a curative instruction when the State criticized defense counsel during rebuttal.

4

"In order to preserve an error for appellate review, an objection stating the grounds must be made at trial, and the same objection must be set out in the motion for new trial and must be carried forward in the appellate brief." *State v. Simms*, 630 S.W.3d 870, 883 (Mo. App. W.D. 2021) (quoting *State v. Ratliff*, 622 S.W.3d 736, 745 (Mo. App. W.D. 2021)). Under this standard, Bellamy's first point is partially preserved. He timely objected to the following rebuttal remark by the State:

> So he just wants to rewrite history now so you forget what [Victim] said and what the SANE nurse said and that you can just come to the conclusion that for some reason, because they had sex 20 years ago, it was acceptable for Mr. Bellamy to go in her bedroom and rape her without her consent because apparently in the world that his defense attorney lives in, once you've had sex with somebody, you've forfeited your right to ever say no again.

The court overruled Bellamy's objection, and, in his motion for new trial, he argued that the court erred in doing so. Thus, Bellamy's claim as to the above remark by the State is properly preserved for appellate review, and we review this part of his claim for abuse of discretion. *State v. Steele*, 314 S.W.3d 845, 851 (Mo. App. W.D. 2010).

Bellamy also takes issue with the court's failure to intervene when, during rebuttal, the State said,

> And now Mr. Bellamy's defense attorney wants to rewrite history and tell you a bunch of things that I didn't see happen. . . . You heard what [Victim] testified to, and I hope you paid attention and remember it. It's none of the things that Mr. Bellamy's defense attorney just told you.

And Bellamy argues that the court failed to intervene when the State impugned defense counsel's character and integrity by labeling him a victim blamer and supporter of rape, citing the following rebuttal remark by the State:

5

> But for some reason, people think it's okay to blame the victim of a sex offense because she didn't fight hard enough, because she is responsible, apparently, in [defense counsel]'s view, for stopping this from happening. I don't know what planet he lives on, but it is not this one and it's not the law of Missouri that a woman has to stop that from happening.

But Bellamy did not object to these latter remarks at trial, and he did not claim error in connection with them in his motion for new trial. Thus, his claim as to these latter remarks is not preserved for appellate review and "is subject, at best, to plain error review." *State v. Ratliff*, 622 S.W.3d 736, 745 (Mo. App. W.D. 2021). "Under plain error review, we must determine whether the alleged error is 'evident, obvious, and clear error' [and] 'facially establishes substantial grounds for believing that manifest injustice or a miscarriage of justice' has occurred." *Id.* at 745-46 (quoting *State v. Campbell*, 600 S.W.3d 780, 788-89 (Mo. App. W.D. 2020)). "'[T]he defendant bears the burden of demonstrating manifest injustice entitling him to' plain error review." *State v. Brandolese*, 601 S.W.3d 519, 526 (Mo. banc 2020) (quoting *State v. Oates*, 540 S.W.3d 858, 863 (Mo. banc 2018)).

Bellamy's first point rests on the presumption that the State's remarks were a personal attack on defense counsel. "If the argument is found to have been a personal attack, it is improper and objectionable." *Steele*, 314 S.W.3d at 852. "However, if the statement is characterized as an attack on the defense's technique or trial tactics, 'rather than counsel's integrity or character[,]' the argument is permissible." *Id.* (quoting *State v. Reyes*, 108 S.W.3d 161, 170 (Mo. App. W.D. 2003)).

Bellamy cites several cases in which prosecutorial comments during closing were found to be improper. In each, the State either suggested that defense counsel was lying,

6

had committed a crime, or had otherwise acted improperly. *See, e.g., State v. Greene*, 820 S.W.2d 345, 347 (Mo. App. S.D. 1991) (prosecutor accused defense counsel of lying); *State v. Hornbeck*, 702 S.W.2d 90, 93 (Mo. App. E.D. 1985) (prosecutor accused defense counsel of conspiring to commit a crime); *State v. Spencer*, 307 S.W.2d 440, 447 (Mo. 1957) (prosecutor told jury that defense counsel browbeat witnesses).

Despite Bellamy's characterization to the contrary, the State did not "vehemently argu[e]" that defense counsel lied to the jury or otherwise acted improperly. The remarks that defense counsel was trying to rewrite history or was wrong in his interpretation of the evidence were permissible comments on defense counsel's view of Victim's testimony and the persuasiveness of defense counsel's arguments. *See, e.g., State v. Girardier*, 801 S.W.2d 793, 797 (Mo. App. E.D. 1991) (prosecutor's argument, read in context, was challenging defense counsel's interpretation of testimony and was not attacking defense counsel personally); *Steele*, 314 S.W.3d at 852 (trial court did not err by overruling objection to State's comments suggesting that defense counsel's argument was unpersuasive).

Moreover, "when complained of remarks come in the rebuttal portion of argument by the State, the trial court may consider whether the comments were invited in that the State may go further by way of retaliation in answering the argument of the defendant than would be normally allowed." *State v. Perkins*, 656 S.W.3d 285, 304 (Mo. App. E.D. 2022) (quoting *State v. Hall*, 319 S.W.3d 519, 523-24 (Mo. App. S.D. 2010)). "The State 'has considerable leeway to make retaliatory arguments at closing' and it 'may retaliate to an issue raised by the defense even if [the] comment would be improper.'" *Id.*

7

(quoting *State v. Sanchez*, 186 S.W.3d 260, 265 (Mo. banc 2006)). Here, the State's remark that rape victims should not be blamed for their failure to fight hard enough was a proper rebuttal to defense counsel's mischaracterization of Victim's testimony[3] and a permissible criticism of the defense's theory of the case.

Even if we were to find the State's rebuttal remarks improper—a finding we do not make—"[a] conviction will be reversed only if it is established that the complained of comments had a decisive effect on the jury's determination." *Campbell*, 600 S.W.3d at 793 (quoting *State v. McClain*, 824 S.W.2d 103, 105 (Mo. App. E.D. 1992)); *see also State v. Woods*, 580 S.W.3d 566, 579 (Mo. banc 2019) (We "rarely find[] plain error in closing argument, and reversal is warranted only if the defendant shows the improper argument "had a decisive effect on the jury's determination.") (quoting *State v. McFadden*, 369 S.W.3d 727, 747 (Mo. banc 2012)). "A decisive effect is shown when there is a reasonable probability that the verdict would have been different in the absence of the argument." *State v. Chism*, 252 S.W.3d 178, 186 (Mo. App. W.D. 2008). Here, Bellamy failed to show that the State's rebuttal remarks had a decisive effect on the jury's decision.

The trial court did not abuse its discretion in overruling Bellamy's objection to the State's rebuttal remarks. And, because Bellamy failed to "facially establish[] substantial grounds for believing that manifest injustice or a miscarriage of justice" resulted from

---

[3] Victim testified that she was not worried when Bellamy got in bed with her because they were good friends. Defense counsel described Victim's testimony as "Hey, it's perfectly fine to get in the bed," which misstated Victim's testimony and could have suggested that Victim should have done more to prevent being raped.

those remarks, we decline to engage in plain error review of the unpreserved portion of his claim. *Ratliff*, 622 S.W.3d at 745-46 (quoting *Campbell*, 600 S.W.3d at 788-89). Point I is denied.

## II. The trial court did not err by failing to give a curative instruction when the State's closing argument misstated the elements of second-degree rape.

In his second point, Bellamy claims the court plainly erred by failing to give a curative instruction when the State's closing argument misstated the elements of second-degree rape.[4] Bellamy contends the State's closing argument misled the jury by (1) stating that one must ask for permission before engaging in sexual intercourse[5] and (2) repeatedly misstating the elements of the charged offense.[6]

"Usually, misstatements of the law are not deemed reversible error when the proper law is given to the jury because we assume the jury followed the law as stated in the instructions." *Chism*, 252 S.W.3d at 186; *see also State v. Hashman*, 197 S.W.3d

---

[4] Bellamy did not object to the State's misstatements, and he did not raise this issue in his motion for new trial, so Point II is not preserved for appellate review. *State v. Simms*, 630 S.W.3d 870, 883 (Mo. App. W.D. 2021). Accordingly, Bellamy requests plain error review of Point II.

[5] Specifically, Bellamy points to the State's remark during rebuttal argument that, "You have to ask. You have to talk to somebody. That's all you have to do."

[6] "A person commits the offense of rape in the second degree if he or she has sexual intercourse with another person knowing that he or she does so without that person's consent." § 566.031.1. When describing the elements of the offense during closing, the State repeatedly defined rape as "sex without consent," omitting the knowledge element. But, during rebuttal, the State encouraged the jury

> to read instruction No. 7 which is the verdict director for rape in the second degree and which lays out the elements of that crime for you. And the elements are that someone has sexual intercourse with someone else without their consent, and knowing that they do that without their consent.

9

119, 135 (Mo. App. W.D. 2006) ("When counsel misstates the law, the misstatement is harmless error if the court properly instructs the jury on that point of law or instructs that the attorneys' statements and arguments are not evidence." (quoting *Lingar v. Bowersox*, 176 F.3d 453, 460 (8th Cir. 1999)).

Here, the court properly instructed the jury. In relevant part, the court told the jury, "The law applicable to this case is stated in the[] instructions." The court further instructed that counsels'

> arguments are intended to help you in understanding the evidence and applying the law, but they are not evidence. . . . You will bear in mind that it is your duty to be governed in your deliberations by the evidence as you remember it, the reasonable inferences which you believe should be drawn therefrom, and the law as given in these instructions.

And the verdict director (Instruction No. 7) correctly listed the elements of second-degree rape:

> If you find and believe from the evidence beyond a reasonable doubt:
>
> First, that on or about February 9, 2019, in the State of Missouri, the defendant had sexual intercourse with [Victim], and
>
> Second, that defendant did so without the consent of [Victim], and
>
> Third, that defendant knew or was aware that defendant did not have the consent of [Victim],
>
> then you will find the defendant guilty of rape in the second degree[.]
>
> However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense[.]
>
> As used in this instruction, "consent" or lack of consent can be express or implied.

10

Moreover, "[i]n reviewing closing arguments, [we] examine[] the context of the argument made in light of the entire record." *State v. Mueller*, 568 S.W.3d 62, 76 (Mo. App. S.D. 2019) (quoting *State v. Walter*, 479 S.W.3d 118, 124 (Mo. banc 2016)). Here, the record contained considerable evidence on each element of second-degree rape, including the knowledge element. Victim testified that she twice swatted Bellamy's hand away and told him to stop. Then, when Bellamy straddled Victim and tried to pull her pajama pants and underwear down, she yanked them back up and told him to stop and get off of her. From Victim's testimony, the jury could have concluded that Bellamy knew he lacked her consent.

In light of the court's instructions and the record as a whole, we cannot say, as a matter of law, that the State's remark that consent means "you have to ask" and its references to rape as "sex without consent" had "a decisive effect on the jury's determination." *Wood*, 580 S.W.3d at 579 (quoting *McFadden*, 369 S.W.3d at 747). And, because Bellamy failed to "facially establish[] substantial grounds for believing that manifest injustice or a miscarriage of justice" resulted from the alleged error, we decline to engage in plain error review. *Ratliff*, 622 S.W.3d at 745-46 (quoting *Campbell*, 600 S.W.3d at 788-89). Point II is denied.

**III.** **The trial court did not err by overruling defense counsel's objection to a question posed by the State during its redirect examination of Victim.**

For his third point, Bellamy claims the court abused its discretion by overruling defense counsel's objection to a question posed by the State during its redirect examination of Victim.

On direct examination, Victim testified that, the evening Bellamy came to her home, they watched Netflix and talked. On cross-examination, defense counsel asked Victim what was on television, and she answered, "I don't remember. It was Netflix." Defense counsel also asked Victim several questions about Bellamy's attire, and Victim responded that he was wearing jeans and a black jacket. Defense counsel then asked Victim if Bellamy removed his jacket, and she replied, "I believe he did eventually."

On redirect examination by the State, the following exchange occurred:

[Prosecutor]: [Defense counsel] asked you what you watched on Netflix that night and when Bellamy removed his jacket, and you can't remember those details. Are those details insignificant compared with the fact that you got raped by your childhood friend that night?

[Defense counsel]: Objection.

[Victim]: Not at all.

[Defense counsel]: Mischaracterization.

[Court]: Overruled.

[Victim]: Not at all.

[Prosecutor]: Is it harder to remember those details than the details of his assault of you that night?

[Victim]: Yes.

Bellamy's motion for new trial did not assign error for overruling his objection to the State's redirect of Victim. And, on appeal, he argues the State's questions were leading, which is a different objection than the one he voiced at trial. Because Bellamy did not raise this issue in his motion for new trial and the issue he raises now is different than the one raised at trial, Bellamy's third point is not preserved for appellate review and "is subject, at best, to plain error review." *Ratliff*, 622 S.W.3d at 745.

12

Bellamy complains about a single question asked by the State during a two-day trial at which the State offered considerable evidence of Bellamy's guilt. Victim provided detailed testimony about the encounter. In addition, the State offered the testimony of Friend who described Victim's emotional state, the testimony of the SANE nurse who indicated that Victim showed signs of recent vaginal tearing, and the testimony of a DNA analyst who explained that Bellamy was the likely contributor of male DNA detected in a vaginal swab collected from Victim. In view of the evidence presented, Bellamy failed to carry his "burden of demonstrating manifest injustice entitling him to plain error review." *Brandolese*, 601 S.W.3d at 526 (quoting *Oates*, 540 S.W.3d at 863) (internal quotation omitted). Point III is denied.

## IV. The trial court did not err by rejecting Bellamy's proffered instruction on second-degree sexual abuse.

Lastly, Bellamy contends the court abused its discretion by refusing to instruct the jury on second-degree sexual abuse as a lesser-included offense of second-degree rape.

"We review *de novo* preserved claims of instructional error."[7] *State v. Torres*, 658 S.W.3d 270, 274 (Mo. App. W.D. 2023) (quoting *State v. Rice*, 597 S.W.3d 322, 325-26 (Mo. App. E.D. 2019)). The failure to give a requested instruction on a lesser-included offense is reversible error only if "the statutory requirements for giving a requested jury instruction are met." *State v. Rice*, 573 S.W.3d 53, 63 (Mo. banc 2019). And "a trial

---

[7] Bellamy raised the issue of the court's failure to instruct the jury on the lesser-included offense of second-degree sexual abuse in his motion for new trial, which the court denied. Thus, the issue of instructional error was properly preserved for appeal.

court does not commit instructional error by rejecting an improper jury instruction for [a] lesser included offense." *State v. Sanders*, 522 S.W.3d 212, 215 (Mo. banc 2017).

During the instruction conference, Bellamy offered the following instruction for second-degree sexual abuse on the theory that it constituted a lesser-included offense of second-degree rape:

> If you find and believe from the evidence beyond a reasonable doubt:
>
> First, that on or about February 19, 2019,[8] in the State of Missouri, the defendant knowingly touched the genitals of [Victim], and
>
> Second, that the defendant did so for the purpose of arousing his own sexual desire, and
>
> Third, the defendant did so without the consent of [Victim],
>
> Then you will find defendant guilty of sexual abuse in the second degree[.]
>
> However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense[.]

The trial court refused Bellamy's instruction because it did not believe second-degree sexual abuse was a lesser-included offense of second-degree rape. Bellamy now argues that, because there was a basis in the evidence to acquit him of the greater offense of second-degree rape[9] and to convict him of the lesser-included offense of second-

---

[8] The reference to February 19 was a typographical error. The correct date was February 9. The State argues that this error alone would have justified the trial court's rejection of the proffered instruction. Because there are more substantial errors with the instruction, we need not resolve whether this typographical error, alone, would have justified the court's refusal.

[9] As noted above, "A person commits the offense of rape in the second degree if he or she has sexual intercourse with another person knowing that he or she does so

14

degree sexual abuse,[10] § 556.046[11] obligated the trial court to instruct the jury on second-degree sexual abuse.

We need not, however, resolve whether second-degree sexual abuse is a lesser-included offense of second-degree rape because the sexual abuse instruction Bellamy proffered did not conform to the Missouri Approved Instructions (MAI), and "the trial court is not compelled to give an incorrect instruction and does not err in refusing a flawed instruction." *State v. Blurton*, 484 S.W.3d 758, 768 (Mo. banc 2016) (holding there was no error in the trial court's refusal of a proffered lesser-included offense instruction that failed to comply with the MAI requirements).

"Rule 28.02(c) mandates the exclusive use of a MAI-CR instruction whenever there is one applicable under the law and Notes on Use." *State v. Marley*, 598 S.W.3d 204, 213 (Mo. App. W.D. 2020) (quoting *State v. Henderson*, 551 S.W.3d 593, 600 (Mo. App. W.D. 2018)). "The law is clear that where there is an applicable MAI-CR

---

without that person's consent." § 566.031.1. "Sexual intercourse" means "any penetration, however slight, of the female genitalia by the penis." § 566.010(7).

[10] "A person commits the offense of sexual abuse in the second degree if he or she purposely subjects another person to sexual contact without that person's consent." § 566.101.1. "Sexual contact" means "any touching of another person with the genitals or any touching of the genitals or anus of another person . . . for the purpose of arousing or gratifying the sexual desire of any person or for the purpose of terrorizing the victim." § 566.010(6).

[11] A court is required to instruct a jury on a lesser-included offense under § 556.046 when "(1) 'a party timely requests the instruction,' (2) 'there is a basis in the evidence for acquitting the defendant of the charged offense,' and (3) 'there is a basis in the evidence for convicting the defendant of the lesser included offense for which the instruction is requested.'" *State v. Sanders*, 522 S.W.3d 212, 216 (Mo. banc 2017) (quoting *State v. Jackson*, 433 S.W.3d 390, 396 (Mo. banc 2014)).

15

instruction, that instruction must be given to the exclusion of any other instruction."
*State v. Greer*, 879 S.W.2d 683, 685 (Mo. App. W.D. 1994).

Bellamy's proffered instruction omitted the fourth paragraph set out in MAI-CR 4th 420.42, requiring the jury to find "that defendant knew that such touching was being accomplished without the consent of [*victim*]." Thus, it did not comply with the MAI. Furthermore, the specific omission was an essential element of the offense (Bellamy's knowledge that Victim did not consent).[12] "A verdict-directing instruction must contain each element of the offense charged and must require the jury to find every fact necessary to constitute essential elements of [the] offense charged." *State v. Stover*, 388 S.W.3d 138, 153-54 (Mo. banc 2012) (quoting *State v. Cooper*, 215 S.W.3d 123, 125 (Mo. banc 2007)).

Because Bellamy's instruction both failed to comply with MAI-CR 4th 420.42 and omitted an essential element of the offense, the trial court did not err in refusing to give that instruction.[13] Because we will affirm a trial court's rejection of a proffered instruction "if the trial court was correct . . . for any reason," *Sanders*, 522 S.W.3d at 215 (quoting *Blurton*, 484 S.W.3d at 766), Point IV is denied.

---

[12] Omission of this element by the State was the basis for Bellamy's claim of error in Point II.

[13] Additionally, "a defendant cannot complain about matters he himself brings into the case." *State v. Smith*, 422 S.W.3d 411, 416 (Mo. App. W.D. 2013).

## Conclusion

Because we find no error, plain or otherwise, the judgment of the trial court is affirmed.

_____
Karen King Mitchell, Judge

Lisa White Hardwick, Presiding Judge, and Cynthia L. Martin, Judge, concur.