**STATE of Missouri, Plaintiff–Respondent,**

v.

**Stacey WILLIAMS, Defendant–Appellant.**

**No. 61534.**

Missouri Court of Appeals,
Eastern District,
Division Two.

July 27, 1993.

Susan Eckles, St. Louis, for defendant-appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Elizabeth L. Levin Ziegler, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

PUDLOWSKI, Judge.

This is an appeal from a judgment of conviction and a ten year sentence for sodomy in violation of § 566.060, RSMo 1986.

Appellant, Stacey Williams, raises three points for reversal. First, appellant objects that expert testimony improperly vouched for the complaining witness' credibility. Second, appellant challenges the "reasonable doubt" instruction modeled on MAI–

CR3d 302.04. Finally, appellant alleges that her constitutional rights were violated because the grand and petit jury selection procedures denied appellant a jury reflecting a fair cross section of the citizens of the city, and failed to comply with the declared policy of §§ 494.400–494.505, RSMo Supp. 1992. For the reasons stated herein, we grant appellant's first point for reversal and deny points two and three. Accordingly, we reverse the conviction and remand for a new trial.

Appellant was convicted for sodomizing her seven year-old cousin. The physical evidence that the victim had been sexually abused was not in dispute. The only issue at trial was whether the appellant was the abuser.

## EXPERT TESTIMONY ON CHILD SEXUAL ABUSE

In point one, appellant claims that the trial court committed plain error in allowing Dr. Monteleone, a doctor with expertise in the area of child sexual abuse, to testify that sexually abused children generally do not lie, and to directly comment on the complaining witness' credibility. Appellant contends that the testimony improperly vouched for the witness' credibility and usurped the function of the jury as the ultimate finder of fact in the case. We agree that the testimony was manifestly prejudicial, and grant appellant's first point for reversal.

Since appellant concedes, and we agree, that she did not properly preserve this point for appeal, we review only for plain error. Under the plain error rule, appellant bears the burden of demonstrating that the action of the trial court was not only erroneous, but that the error so substantially impacted upon her rights that manifest injustice or a miscarriage of justice will inexorably result if left uncorrected. *State v. Hornbuckle*, 769 S.W.2d 89, 93 (Mo. banc 1989); *State v. Hadley*, 815 S.W.2d 422, 423 (Mo. banc 1991). Relief under the plain error doctrine, therefore, requires that the appellant go beyond the mere showing of demonstrable prejudice to show manifest prejudice affecting her substantial rights. *Hornbuckle*, 769 S.W.2d at

93. A determination of whether plain error exists must be based on the consideration of the facts and circumstances of each case. *State v. Cline*, 808 S.W.2d 822, 824 (Mo. banc 1991). "When guilt is established by overwhelming evidence, no injustice or miscarriage of justice will result from the refusal to invoke the rule." *State v. McKinley*, 689 S.W.2d 628, 632 (Mo.App. E.D.1984).

Even if the higher burden of plain error was not applicable, "determinations as to the relevancy and admissibility of expert testimony are within the sound discretion of the trial court, and will not be overturned unless that discretion has been abused." *State v. Cooper*, 708 S.W.2d 299, 302 (Mo.App.E.D.1986) (quoting *State v. Hensley*, 655 S.W.2d 810, 811 (Mo.App.E.D. 1983)).

General principles assist Missouri courts on the admissibility of expert testimony. Expert testimony should never be admitted unless it is clear that the jurors themselves are not capable, for want of experience or knowledge of the subject, to draw correct conclusions from the facts proved. *State v. Taylor*, 663 S.W.2d 235, 239 (Mo. banc 1984). The evidence must aid the jury. *Id.* The expert evidence should be excluded if it unnecessarily diverts the attention of the jury from the question to be decided. *Id.* However, an expert may testify as to his/her opinion on an ultimate issue in a criminal case: " '[O]pinions of experts are often admissible upon vital issues which only the trier of fact may decide,' " *id.*, as long as the expert witness does not express an opinion as to whether the defendant is guilty of the charges. *Id.* Moreover, "[e]xpert opinion testimony is not admissible as it relates to credibility of witnesses." *Id.* (citing *Beishir v. State* 522 S.W.2d 761, 765 (Mo. banc 1975)).

In child sexual abuse cases, there are typically two types of expert testimony challenged: 1) general testimony describing behaviors and other characteristics commonly observed in sexually abused victims (often called general "profile" testi-

mony); and 2) particularized testimony concerning the alleged victim's credibility. *E.g., State v. Moran,* 151 Ariz. 378, 382, 728 P.2d 248, 252 (1986). While the trial court has great discretion in admitting the former, the latter usurps the province of the trier of fact and is inadmissible. *Compare State v. Ogle,* 668 S.W.2d 138 (Mo. App.S.D.1984) (upholding admissibility of profile evidence that did not comment on the complaining witness' credibility) *with Taylor,* 663 S.W.2d 235 (rejecting admissibility of profile testimony that did comment on victim's credibility). *See generally* John E.B. Myers et al., *Expert Testimony In Child Sexual Abuse Litigation,* 68 NEB. L.REV. 1 (1989).

Other courts have more fully addressed and more specifically affirmed the propriety of general profile testimony in child sexual abuse cases. *See United States v. Azure,* 801 F.2d 336 (8th Cir.1986) (disallowing expert testimony that commented on the credibility of the victim, but allowing general profile testimony); *State v. Moran,* 151 Ariz. 378, 728 P.2d 248 (1986) (acknowledging that testimony on the general, behavioral characteristics of sexual abuse victims would be allowed); *State v. Lindsey,* 149 Ariz. 472, 720 P.2d 73 (1986); *State v. Newman,* 109 N.M. 263, 784 P.2d 1006 (App.1989) (holding expert testimony of general characteristics of child sexual abuse victims to be admissible to assist jury to understand the child's behavior); *State v. Catsam,* 148 Vt. 366, 534 A.2d 184 (1987) (upholding admissibility of social worker's expert testimony regarding general profile evidence of child abuse victim, but not allowing opinion evidence that sufferers of syndrome do not fabricate stories); *State v. Myers,* 382 N.W.2d 91 (Iowa 1986) (allowing general testimony, but disallowing testimony that children "rarely lie," as having effect of directly opining the truth of complaining witness); *Sexton v. State,* 529 So.2d 1041 (Ala.Crim.App.1988) (holding as admissible a clinical psychologist's testimony concerning generally accepted symptoms of child sexual abuse victims including fear and anxiety, increased knowledge of sexual issues, and delayed reporting); *State v. Middleton,* 294 Or.

427, 657 P.2d 1215 (1983) (permitting expert to give testimony on the reaction of the typical child victim of familial sexual abuse but not on whether victim was telling the truth); *Brady v. State,* 540 N.E.2d 59, 71 (Ind.App. 3 Dist.1989) (approving expert testimony describing behavior commonly observed in sexually abused children), *vacated on other grounds,* 575 N.E.2d 981 (Ind.1991).

While Missouri has not explicitly addressed the issue, other jurisdictions have explained that general profile evidence of child sexual abuse victims can be a proper topic of expert testimony. Such testimony has been admitted to "assist the jury's understanding of the behavior of sexually abused children, a subject beyond the knowledge of an ordinary juror." *Newman,* 109 N.M. at 266, 784 P.2d at 1009. We cannot assume the average juror is familiar with the behavioral characteristics of victims of child molesting. Knowledge of such characteristics may well aid the jury in weighing the testimony of the alleged child victim. *Lindsey,* 149 Ariz. at 474, 720 P.2d at 75. "Expert testimony in child abuse cases plays a 'useful role by disabusing the jury of some widely held misconceptions about rape and rape victims, so that it may evaluate the evidence free of the constraints of the popular myths.'" *Newman,* 109 N.M. at 266, 784 P.2d at 1009 (quoting *People v. Bledsoe,* 36 Cal.3d 236, 203 Cal.Rptr. 450, 457, 681 P.2d 291, 298 (1984)). Principally, general profile evidence has been accepted to explain victim behavior that might appear unusual to a lay juror, not, however, to prove that sexual abuse occurred. *People v. Taylor,* 75 N.Y.2d 277, 552 N.Y.S.2d 883, 890, 552 N.E.2d 131, 138 (1990); *Bledsoe,* 203 Cal. Rptr. at 450, 681 P.2d at 291; *See also* Myers et al., *supra,* at 65.

In contrast to the admissibility of general profile evidence, an expert will not be allowed to proffer opinion testimony concerning a particular witness' credibility. Particularized testimony on credibility is precisely the kind of evidence that the court in *Taylor* found to be an invasion of the jury's province to make credibility de-

terminations. *Taylor*, 663 S.W.2d at 241. Expert testimony presents the danger that jurors may be over-awed by the evidence, or may defer too quickly to the expert's opinion. Myers et al., *supra*, at 20, 127. Although Missouri strictly prohibits expert evidence on witness credibility, the State has not, yet, specifically dealt with the situation in this case, in which an expert testifies to the general characteristic of veracity of child sexual abuse victims. A survey of other jurisdictions that have dealt with this issue, therefore, will be useful.

Other States have overwhelmingly rejected the admission of expert testimony that comments directly on a witness' credibility, or on the credibility of sexually abused children as a class. Expert witnesses have neither been allowed to give their opinion of the accuracy, reliability or credibility of a particular witness; nor have they been allowed to give opinions with respect to the accuracy, reliability or truthfulness of witnesses of the same type under consideration. *State v. Lindsey*, 149 Ariz. 472, 475, 720 P.2d 73, 76 (1986) (rejecting expert testimony of a study that found one percent of alleged incest victims lie, as well as testimony that most people in the field feel that it is a very small proportion that lie); *State v. Moran*, 151 Ariz. 378, 728 P.2d 248 (1986); *State v. Myers*, 382 N.W.2d 91 (Iowa 1986) (holding as inadmissible the testimony of expert that in her sixteen years of work she had only one child lie to her about sexual abuse); *State v. Catsam*, 148 Vt. 366, 534 A.2d 184 (1987) (finding the testimony of expert that sufferers of posttraumatic syndrome disorder generally do not fabricate claims of sexual abuse to be the equivalent of a direct comment on the credibility of the testifying complainant and, therefore, inadmissible); *Lawrence v. State*, 796 P.2d 1176 (Okl.Cr.1990) (declaring error in admission of social worker's testimony that most kids do not lie about sexual abuse); *Commonwealth v. Cepull*, 390 Pa.Super. 167, 568 A.2d 247, 250 (1990) (holding that error occurred when an expert was permitted to quote studies on the truthfulness-percentage of sexual abuse victims), *overruled on other grounds by* *Commonwealth v. Garcia*, 403 Pa.Super. 280, 588 A.2d 951, 955 (1991); *Powell v. State*, 527 A.2d 276, 279–280 (Del. Supr.1987) (disapproving expert testimony that ninety-nine percent of the children receiving treatment in expert's sexual abuse program had told the truth); *See also* Myers et al., *supra*, at 121–122.

■■■ Expert testimony that comments directly on a particular witness' credibility, as well as expert testimony that expresses an opinion with respect to the credibility or truthfulness of witnesses of the same type under consideration invests "scientific cachet" on the central issue of credibility and should not be admitted. However, it may be appropriate for an expert to testify that a child demonstrates age-inappropriate sexual knowledge or awareness, and that a child's behaviors are consistent with a stressful sexual experience. *See Taylor*, 663 S.W.2d at 241; Myers et al., *supra*, at 85.

The allegedly improper testimony in this case was given by a Dr. Monteleone. Appellant complains to one paragraph of the doctor's forty-eight pages of testimony in the trial transcript. In this paragraph the doctor stated the following:

There are only two people who know whether a child has been sexually abused, the child and the person who abused them, and very rarely do children lie about it, especially 8–year olds or 7–year–olds. So the most important thing is what the child says, how consistent a statement, the circumstances under which the child said—was it a spontaneous declaration, were there any leading questions asked, and in this case there were none. The nurse asked her, and she spontaneously, who had sexually abused her. That's important. Well I think that's—that's declares who it was, and the child is the most apt person to say it, and they don't—they essentially don't lie. Incidents of lying among children is very low, less than three percent. And as I said, the physical findings and the behavioral indicators can only support what the child says....

The doctor's statements that "very rarely do children [sexually abused children] lie," that the "[i]ncidents of lying among children is very low, less than three percent," that if the child was not asked leading questions, then the child's spontaneous response "declares who it was [who sexually abused her]," and that the "physical findings and the behavioral indicators can only support what the child says," went beyond admissible testimony concerning general, behavioral characteristics of sexually abused children. Vouching too much for the victim's credibility, these statements supplied improper verisimilitude on the issue of whether the appellant was guilty. *Taylor,* 663 S.W.2d at 240. In addition, the testimony included improper quantification of the probability of the complaining witness' credibility.

The improperly admitted evidence was not only demonstrably prejudicial, but given the facts and circumstances of the case, it was fundamental error. See *Lawrence v. State,* 796 P.2d 1176 (Okl.Cr.1990) (holding expert testimony concerning the credibility of a sexually abused child to be fundamental error requiring reversal, even though the point was not preserved for appellate review). The error, here, gave rise to manifest injustice affecting substantial rights. Appellant, therefore, has met the burden of the plain error doctrine to warrant reversal. The State relied essentially on testimonial evidence of the victim's allegations to prove its case. In its closing argument, the State repeated and emphasized the significance of the doctor's opinion on credibility. Since the jury's verdict was the result of its impression of the witnesses' credibility, we hold that the doctor's opinion on the truthfulness of the victim manifestly prejudiced appellant by usurping the province of the jury. The danger was too great that the jury accepted the doctor's testimony as conclusive of appellant's guilt without making an independent determination of the victim's credibility. The doctor's statements amounted to an impressively qualified stamp of truthfulness on the victim's story, and a miscarriage of justice will result from a refusal to reverse for plain error.

Appellant's first point granted.

## "REASONABLE DOUBT" INSTRUCTION

Appellant's second point challenges the "reasonable doubt" instruction modeled on MAI–CR3d 302.04. Appellant claims that the portion of the instruction defining "proof beyond a reasonable doubt" as "proof that leaves you firmly convinced of defendant's guilt" improperly lowers the state's burden of proof in a criminal case. We do not concur.

The exact challenge which appellant puts forth has been consistently and repeatedly denied by the Missouri Supreme Court. *State v. Ervin,* 835 S.W.2d 905, 924 (Mo. banc 1992); *State v. Blankenship,* 830 S.W.2d 1, 13 (Mo. banc 1992); *State v. Griffin,* 848 S.W.2d 464, 469 (Mo. banc 1993); *State v. Antwine,* 743 S.W.2d 51, 62–63 (Mo. banc 1987), *cert. denied,* 486 U.S. 1017, 108 S.Ct. 1755, 100 L.Ed.2d 217 (1988). Second point denied.

## JURY SELECTION PROCEDURES

In the third point, appellant alleges that the trial court erred when it overruled her motion to quash the indictment or to stay the proceedings. She claims that her constitutional rights to due process, equal protection, and to a fair and impartial trial were violated because the grand and petit jury selection procedures denied appellant a jury reflecting a fair cross section of the citizens of the city, and failed to comply with the declared policy of §§ 494.400–494.-505, RSMo Supp.1992. We disagree.

Appellant premises her argument on a statistical study compiled in October 1990 by Kenneth Warren, Ph.D. We have repeatedly held the above-mentioned statistical analysis to be irrelevant to grand jury selection procedures occurring after the 1989 changes to the statutory provisions of §§ 494.400–494.505. *State v. Wheeler,* 845 S.W.2d 678, 681 (Mo.App.E.D.1993); *See also State v. Landers,* 841 S.W.2d 791 (Mo. App.E.D.1992). These statutes were in effect when the grand jury returned appellant's indictment. "Because the statistical

analysis did not cover the period of time relevant to the prosecution of defendant, the data cannot be used to support his constitutional challenge to the grand jury selection procedures." *Wheeler,* 845 S.W.2d at 681.

■ With regard to appellant's challenge to the selection of the petit jury, an administrative order issued before appellant's trial by the Board of Jury Commissioners corrected the perceived deficiencies in the petit jury selection procedures. *Wheeler,* 845 S.W.2d at 681–682. Appellant presented no evidence that the new procedures were inadequate, thus, the administrative order addressed any deficiencies prior to the time of defendant's trial. *Id.; See also State v. McDowell,* 832 S.W.2d 333, 335 (Mo.App.1992). Defendant's third point denied.

Reversed and remanded for a new trial.

CRANDALL, P.J., and GRIMM, J., concur.