**STATE of Missouri, Respondent,**

**v.**

**Anthony P. DRAGO, Appellant.**

**ED 104614**

Missouri Court of Appeals,
Eastern District,
DIVISION TWO.

Filed: August 22, 2017

Motion for Rehearing and/or Transfer to Supreme Court Denied September 25, 2017

Application for Transfer Denied November 21, 2017

Daniel N. McPherson, Assistant Attorney General, P.O. Box 899, Jefferson City, MO 65102, for respondent.

Samuel Buffaloe, Woodrail Centre, 1000 West Nifong, Building 7, Suite 100, Columbia, MO 65203, for appellant.

Lisa P. Page, Presiding Judge

Following trial, Anthony Drago ("Defendant") appeals the judgment entered upon a conviction of one count of first-degree child molestation, Section 566.067 (RSMo Cum. Sup. 2012). Defendant contends the trial court: (I) erred in denying him the opportunity to present facts surrounding his polygraph exam; and (II and III) plainly erred in failing to *sua sponte* issue curative instructions or strike the testimony of two witnesses. We affirm.

## BACKGROUND [1]

In March 2012, the Missouri Children's Division placed then ten-year-old J.L. ("Victim") and his three siblings in the custody of S.F. ("Aunt") and R.F. ("Uncle"), who had four children of their own. Aunt and Uncle were close friends with Defendant. Defendant and his wife had four children, and Victim became friends with one of Defendant's children. About once a month, Victim would sleep over at Defendant's home, even though neither Defendant nor his wife was approved by the Children's Division as a supervisor of Victim. During one of these sleepovers, Victim awoke to find his pajama pants and underwear pulled down. Victim saw Defendant masturbating and felt Defendant touching his penis.

Sometime thereafter Victim disclosed the abuse to his older sister but begged her not to tell anyone. A week later, Victim's sister reported the abuse to her camp counselor, who informed Aunt and Uncle the following day. Aunt and Uncle told Victim they were "just going to keep it within the family." They did not report the

abuse allegation to the Children's Division, but subsequently prevented Victim from being alone with Defendant.

After Aunt and Uncle decided to keep the abuse of Victim "in the family," Uncle and Defendant consulted with their church's pastor ("Pastor") about the abuse. Defendant contends the Pastor suggested Defendant take a polygraph test and present the results to Uncle "in an effort to exonerate himself." Defendant did so, and shared the results (which were favorable to Defendant) with Uncle and Pastor.

Approximately one year later, in June 2014, the abuse was anonymously reported to the Children's Division which ultimately led to Aunt and Uncle's loss of custody of Victim and his siblings. Defendant was charged with first-degree child molestation.

Prior to Defendant's trial, the trial court granted the State's motion *in limine* excluding the polygraph results and circumstances. At trial, the State presented the testimony of Jamie Turnbough, an investigator with the Jefferson County Children's Division, and Christi Leslie, an interviewer with the Children's Advocacy Center. Each testified as to their general experience working with abused children, as well as to their specific interactions with Victim. Upon cross-examination, each stated that it is a "myth" that a child would falsely accuse another of sexual abuse for attention. Defendant did not object to either witness's testimony.

A jury convicted Defendant of first-degree child molestation, and the court imposed a sentence of six years' imprisonment.

This appeal follows.

---

1. Defendant does not challenge the sufficiency of the evidence in this appeal. The facts are recited in a light most favorable to the ver-

dict. *State v. Mackey,* 822 S.W.2d 933, 934 (Mo. App. E.D. 1991).

## Point I—No Abuse of Discretion in Excluding Polygraph

In his first point on appeal, Defendant contends the trial court erred in granting the State's motion *in limine* excluding (and denying his request at trial to admit) the favorable results and surrounding circumstances of the privately-conducted polygraph test. Defendant maintains these facts were relevant to provide context to Aunt and Uncle's testimony, in that they believed him and not Victim, thereby casting reasonable doubt in the jury's minds as to Defendant's guilt. Defendant asserts he was deprived of his right to due process of law, right to a fair trial, and right to present a defense, as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Article I, sections 10 and 18(a) of the Missouri Constitution.

### Standard of Review

The trial court is vested with broad discretion to admit or exclude evidence. *State v. Watling*, 211 S.W.3d 202, 206 (Mo. App. S.D. 2007). An appellate court will reverse only if the trial court abused that discretion, which occurs when a ruling is "clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *Id.* This discretion must be exercised in careful consideration of a defendant's rights as a criminal defendant. *State v. Rauch*, 118 S.W.3d 263, 276 (Mo. App. W.D. 2003).

"Evidentiary error is reviewed for prejudice, not mere error, and error is only prejudicial if the court's error affected the outcome of the trial with reasonable probability and deprived the defendant of a fair trial." *State v. Johnstone*, 486 S.W.3d 424, 429 (Mo. App. W.D. 2016).

### Analysis

To be admissible, evidence must be both logically and legally relevant. *State v. Rodriguez*, 482 S.W.3d 444, 448 (Mo. App. E.D. 2016). "Evidence is logically relevant if it tends to make the existence of a material fact more or less probable. *Id.* Evidence is legally relevant if its probative value outweighs any costs related to its admission, such as unfair prejudice, confusion, misleading the jury, or cumulativeness." *Id.*

The results of a polygraph examination are generally inadmissible in Missouri criminal trials "to prove a defendant's truthfulness." *Watling*, 211 S.W.3d at 206; *State v. Biddle*, 599 S.W.2d 182, 185 (Mo. banc 1980). This is because polygraph examination results are "unreliable evidence." *Biddle*, 599 S.W.2d at 191. Even the fact that a defendant took, refused to take, or was willing to take a polygraph is inadmissible. *Id.*

However, a limited exception to this exclusionary principle exists under the "rule of completeness," which allows a party to introduce "the circumstances of a writing, statement, conversation, or deposition so the jury can have a complete picture of the contested evidence introduced by the adversary." *Watling*, 211 S.W.3d at 206; *quoting State ex rel. Kemper v. Vincent*, 191 S.W.3d 45, 49–50 (Mo. banc 2006). The Missouri Supreme Court has succinctly described the rationale behind this exception:

[W]here either party introduces part of an act, occurrence, or transaction, the opposing party is entitled to introduce or to inquire into other parts of the whole thereof in order to explain or rebut adverse inferences which might arise from the fragmentary or incomplete character of the evidence introduced by his adversary—a rule that has

been held to apply even though the evidence was in the first place illegal. *Vincent*, 191 S.W.3d at 50.

In *Vincent*, our Supreme Court found that the rule of completeness required the trial court should have admitted facts surrounding a polygraph exam into evidence. *Id.* Therein, the results of the defendant's exam corresponded with her innocence, but the interviewing detective falsely told her otherwise. *Id.* at 47. Relying upon the detective's statement, the defendant confessed to setting a fire; however, some of her post-confession statements did not comport with the physical evidence in the case. *Id.* At trial, over defendant's objections, the trial court excluded all polygraph-related facts, including the fact that it was discussed during the custodial interview. *Id.* at 48. The Missouri Supreme Court reversed, holding that the detective's false statements about the polygraph "appeared to be instrumental in causing [the defendant] to make the confessions that formed the basis of the state's case against her." *Id.* at 50. Thus, under the rule of completeness, it was "fundamentally unfair to allow the confessions into evidence without allowing [the defendant] to demonstrate the circumstances surrounding the confessions[.]" *Id.*; *see also State v. Baldwin*, 808 S.W.2d 384, 391–92 (Mo. App. S.D. 1991); *State v. Mick*, 546 S.W.2d 508, 509 (Mo. App. 1976) (overruled on other grounds by *Biddle*, 599 S.W.2d at 186).

Importantly, this exception is limited to instances where the polygraph evidence is directly relevant to the circumstances at hand. For example, in *Watling*, the defendant was interviewed three times by the authorities for her role in the death of her husband. 211 S.W.3d 202. During the first interview, she offered one version of the events. *Id.* In a second interview, the detective told defendant the physical evidence did not match her explanations, and

defendant then changed her story. *Id.* The detective expressed skepticism at her new version, and the defendant quickly reverted to her first version. *Id.* She apologized for lying the second time, and offered to take a polygraph test to prove she wasn't lying about the *first* version. *Id.* At trial, the defendant maintained the first version of her story. *Id.* The trial court admitted the recordings of defendant's interviews, but excluded the polygraph-related portions of the tapes. *Id.* at 205. The Missouri Court of Appeals, Southern District affirmed the exclusion, reasoning that since the polygraph had no bearing on the version of her confession that ultimately reached the jury's ears, **all facts and circumstances surrounding the test** were collateral to the true confession, and were therefore inadmissible under *Biddle*. *Id.* at 207.

■ Similar to *Watling*, we find the polygraph results and surrounding circumstances to be a collateral matter, not subject to the *Vincent* rule-of-completeness exception. Aunt and Uncle both testified that after they became aware of the abuse, they decided to "keep it in the family" and not report Victim's allegations to the authorities. Importantly, they made this choice *prior* to any discussions of a polygraph test arose at the meeting with the Pastor, and they did not change their position in support of Defendant after they learned of the polygraph results. Any testimony concerning the polygraph would have been cumulative at best, and any probative value it may have had would have been outweighed by its potential to mislead the jury. *See Watling*, 211 S.W.3d at 207 (discussion of the polygraph examination did not cause the defendant to change her position); *State v. Ridenour*, 334 S.W.3d 724, 732 (Mo. App. S.D. 2011) (Additional evidence as to Victim's veracity would have been cumulative of evidence

already introduced, therefore exclusion was not an abuse of discretion). Moreover, in the absence of the polygraph-related facts, Defendant was free to argue Aunt and Uncle refused to report the abuse because they believed Defendant over Victim. We presume the jury considered Defendant's evidence of their support when weighing the credibility of Aunt, Uncle, Defendant and Victim and ultimately convicting Defendant. *Rodriguez*, 482 S.W.3d at 447 (It is the jury's responsibility to determine the weight and credibility of witnesses).

Therefore, the trial court did not abuse its discretion in granting the state's motion in limine excluding the polygraph test as "unreliable evidence" under *Biddle*, nor in denying Defendant's request to admit facts surrounding the polygraph pursuant to the *Vincent* rule-of-completeness exception. Point I is denied.

**Points II and III—No Plain Error in Refraining from *Sua Sponte* Striking Testimony**

In his second and third points on appeal, Defendant contends the trial court plainly erred in failing to *sua sponte* issue curative instructions or strike the testimony of Jamie Turnbough, an investigator with the Jefferson County Children's Division, and Christi Leslie, an interviewer with the Children's Advocacy Center, both of whom interviewed Victim about the abuse. At trial, during Defendant's cross-examination, Turnbough and Leslie made statements to the effect that it is a "myth" that children fabricate abuse allegations. In neither case did Defendant object or move to strike the testimony. Nevertheless, Defendant argues these alleged errors resulted in a manifest injustice, as they allowed the witnesses to improperly vouch for Victim's credibility. Defendant asserts he was deprived of his right to due process of law as guaranteed by the Fourteenth Amendments to the United States Constitution and Article I, section 10 of the Missouri Constitution.

### Standard of Review

Defendant concedes, and we agree, he did not properly preserve this point for appeal, thus, we review only for plain error. *State v. Williams*, 858 S.W.2d 796, 798 (Mo. App. E.D. 1993). Under the plain error rule, Defendant bears the burden of demonstrating the error so substantially impacted upon his rights that manifest injustice or a miscarriage of justice will inexorably result if left uncorrected. *Id.* A determination of whether plain error exists must be based on the consideration of the facts and circumstances of each case. *Id.*

### Analysis

In child sexual abuse cases, there are typically two types of expert testimony challenged: 1) general testimony describing behaviors and other characteristics commonly observed in sexually abused victims (often called general "profile" testimony); and 2) particularized testimony concerning the alleged victim's credibility. *Id.* at 798-799. While the trial court has great discretion in admitting the former, the latter usurps the province of the trier of fact and is inadmissible. *Id.*

In *Williams*, the State solicited testimony from a doctor with expertise in treating child sexual abuse victims. *Id.* at 801. The doctor stated, *inter alia*, that "very rarely do [sexually abused children] lie," and that the "[i]ncidents of lying among children is very low, less than three percent[.]" *Id.* The defendant did not object, and was found guilty of sexual abuse. *Id.* On appeal, this Court vacated the defendant's convictions and remanded for trial, holding the doctor's testimony "went beyond admissible testimony concerning general, behavioral characteristics of sexually abused

children." *Id.* "Vouching too much for the victim's credibility, these statements supplied improper verisimilitude on the issue of whether the appellant was guilty." *Id.*

The *Williams* court, however, did not create a *per se* rule that the trial court commits plain error anytime it fails to *sua sponte* prohibit any witness from vouching for the victim's credibility. *State v. D.W.N.*, 290 S.W.3d 814, 819 (Mo. App. W.D. 2009). For example, in *State v. Ellis*, 512 S.W.3d 816 (Mo. App. W.D. 2016), the defendant solicited testimony from an expert on **cross-examination** that "children do not lie hardly at all, very seldom, about child sexual abuse," and did not object or move to strike the statement. *Id.* at 837. On appeal, the Missouri Court of Appeals, Western District, rejected the defendant's request for plain error review. *Id.* The court held the testimony was indeed "improper[,] as it commented on credibility." *Id.* However, it was elicited by the defendant "on **cross**-examination during a line of questioning that was itself a suspect attempt to elicit [the expert's] opinions on the subject of credibility." *Id.* (emphasis in original). Therefore, the court affirmed, holding:

> . . . [the defendant] did nothing to preserve a claim of error, or to attempt to remediate the error. More to the point, defendant would have been hard pressed to complain about [the expert's] testimony as it appears to have been invited by the line of questioning employed during cross-examination. [The defendant] cannot take advantage of invited error to seek a reversal of his conviction.

*Id.* (*citing State v. Uka*, 25 S.W.3d 624, 626 (Mo. App. E.D. 2000)).

Here, when cross-examining Turnbough concerning her knowledge and experience in working with sexually abused children, Defendant asked whether "children disclose [sexual abuse] for attention . . . and then continue to disclose for the sole purpose of being in fear?" Turnbough responded: "my training states that that is a myth and it's very rare that a child would falsely accuse for attention." Defendant further solicited on re-cross that, based on Turnbough's training, Defendant's supposition was "a myth," and that "children very rarely lie for attention." Similarly, Defendant elicited from Leslie on cross-examination that she believed "[i]t's uncommon for a child to lie about sexual abuse." As with *Ellis*, each of these exchanges occurred during cross-examination, at Defendant's direction.

Further, while the record does indicate that on redirect, the State questioned these witnesses about their "myth" statements, Defendant opened the door to this testimony because of his solicitation of their answers on cross. *See State v. Couch*, 256 S.W.3d 64, 72 (Mo. 2008), *overruled on other grounds by Mitchell v. Kardesch*, 313 S.W.3d 667, 679 n.9 (Mo. banc 2010). Thus, Defendant "cannot take advantage of invited error to seek a reversal of his conviction[,]" and the trial court did not plainly err in failing to *sua sponte* issue curative instructions or strike these witnesses' testimony. *Ellis*, 512 S.W.3d at 837. Points II and III are denied.

## CONCLUSION

The judgment of the trial court is affirmed.

Roy L. Richter, J. and Philip M. Hess, J., concur.