

# In the Missouri Court of Appeals
# Eastern District

**DIVISION FOUR**

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED106151 |
| | ) | |
| Respondent, | ) | |
| | ) | Appeal from the Circuit Court of the |
| | ) | City of St. Louis |
| vs. | ) | Cause No. 1622-CR02382-01 |
| | ) | |
| WILLIAM RAMSDELL, JR., | ) | Honorable Thomas C. Clark, II |
| | ) | |
| Appellant. | ) | Filed: March 26, 2019 |

## OPINION

William Ramsdell, Jr. ("Defendant") appeals the judgment entered upon his conviction

on two counts of domestic assault in the first degree, three counts of armed criminal action, and

one count of domestic assault in the second degree in violation of §§ 565.072, 571.015, and

565.073.[1] In his sole point on appeal, Defendant argues that the trial court erred in excluding

evidence that limited Defendant's ability to present a meaningful defense. Specifically,

Defendant claims he was precluded from presenting relevant, admissible evidence of Victim's

employment as a prostitute to demonstrate that there was another source of her injuries and to

question her credibility. Defendant argues that the totality of the circumstances of all of the

---

[1] All statutory references are to Mo. Rev. Stat. Cum. Supp. 2012.

excluded evidence would have undermined Victim's testimony, and that such exclusion prejudiced him.

We affirm the judgment of the trial court.

## I.        Factual and Procedural Background

On July 22, 2016, Defendant was charged with two counts of domestic assault in the first degree, one count of domestic assault in the second degree, one count of kidnapping in the first degree, and three counts of armed criminal action for incidents occurring on May 23, 2015, April 22, 2016, and May 25-26, 2016.

The following facts were adduced at trial. Victim and Defendant were in an intimate relationship and had been cohabitating for two years preceding Defendant's arrest. On May 23, 2015, Defendant beat Victim with a pool stick and struck her in the face with his fist for lying about a phone call she had with another man. Victim went to the hospital where she was diagnosed with and treated for a black eye, broken nose, and bruises and cuts on her legs. Officer Shirrell of the St. Louis Metropolitan Police Department ("SLMPD") responded to the hospital's call to interview Victim regarding her injuries. He took photos of her swollen left eye, broken nose, and laceration on her leg where Defendant had struck her with the pool stick. At the hospital, Victim disclosed to Officer Shirrell that Defendant "put his hands on her." During her stay, Victim was notified that she was pregnant, and subsequently left against medical advice because she did not want to assist the authorities in sending the father of her child to jail. For this reason, she gave the police a false phone number and address. Victim testified at trial that she was on heroin before and after visiting the hospital.

About a year later, on April 22, 2016, Victim was again injured by Defendant while they were smoking methamphetamine in their residence. Victim testified that she occasionally would

2

"go out to the streets." When she would return, Defendant wanted to know "every single detail" of Victim's sexual activities with other men. When Victim was not forthcoming with that information on April 22, 2016, Defendant again struck her several times with a pool stick on her arms and legs. She again went to the hospital where she was diagnosed with a broken arm and put in a temporary splint.[2] Officer Brewer-Moore of the SLMPD responded to the hospital and interviewed Victim for "about an hour." He took pictures of Victim's broken arm, bruised hand, and swollen eye where Defendant had jabbed her with a pool stick. Upon discharge from the hospital, Victim returned to live with Defendant.

A month later, on May 25, 2016, Defendant and Victim celebrated her birthday and "did drugs for a little bit of the day." Victim promised to tell Defendant about the other men she "had slept with" because Defendant wanted to know "every single detail." Defendant again hit her with a pool stick whenever the details were not "good enough." Defendant removed Victim's cast because it hurt his fist whenever he struck her. Eventually, Defendant stopped attacking Victim and left the room briefly to deal with a work matter. Victim took this opportunity to hide the pool stick. When Defendant returned, Victim testified he continued beating her, this time with a shower brush. He hit her over the head several times "busting [her] head open." When Defendant left again, she took the opportunity to call her sister, who then called her mom. Her mom called the police. Victim testified that the beatings occurred for "about a day and a half" from May 25, 2016, to May 26, 2016.

Officer West of the SLMPD arrived at the apartment on May 26th and announced his presence at the back door after hearing "some noises." Victim testified that after the police knocked, Defendant told her to be quiet while "he pretended like he was sleeping." Officer West

---

[2] Victim received a cast several days later at a follow-up appointment.

testified that he looked through the window after the apartment "got quiet" and observed Victim standing near Defendant. Officer West noted that Victim had "multiple bruises with blood still running down her face." He pushed the air conditioning unit in and ordered Defendant "not to move" while Victim unlocked the back door for him. Upon entering, Officer West cuffed Defendant and called emergency medical services ("EMS") to treat Victim's injuries. Officer West took pictures of Victim's face, which depicted a "deep laceration" on her scalp as well as dried blood. He also took photos of her bruised legs and prior broken arm that "showed an older injury." Victim testified Defendant had put her in the shower "because there was blood all over her" prior to Officer West responding to the scene. Victim notified Officer West that the shower brush and pool stick were in the residence, but these items were not found in the apartment. Victim was transported to the hospital where she told EMS and the admitting nurse that she was in a bar fight with her cousin. She again left the hospital against medical advice and returned to the residence that she shared with Defendant. At this time, Defendant was in custody for one count of domestic assault in the second degree and one count of armed criminal action.[3]

Prior to trial, the trial court granted the State's motion in limine on August 15, 2017, which precluded Defendant from introducing evidence that Victim was a prostitute. The court also noted that Defendant could not ask about Victim's drug addiction except when questioning her about the dates at issue in the case.

Trial took place on August 15, 2017, following the motion in limine hearing. During trial, the court granted Defendant an opportunity to make an offer of proof outside of the presence of the jury regarding Victim being a prostitute and her illegal drug usage. Officer Brewer-Moore

---

[3] Defendant was later indicted by a grand jury on July 21, 2016, with two counts of domestic assault in the first degree, one count of domestic assault in the second degree, one count of kidnapping in the first degree, and three counts of armed criminal action.

was called to testify about his personal knowledge of Victim's regular drug use and her activities as a prostitute. The court sustained the motion in limine, and further denied Defendant's motions for judgment of acquittal at the close of the State's evidence and at the close of all the evidence. The jury returned its verdict on August 17, 2017, and found Defendant guilty of the charged crimes, except the kidnapping charge.[4] Defendant subsequently filed a motion for new trial, which the court denied. On October 6, 2017, Defendant was sentenced as a prior and persistent offender to an aggregate term of 14 years' imprisonment for the domestic assault in the first degree and armed criminal action counts, along with a concurrent term of 7 years for the domestic assault in the second degree.

This appeal follows.

## II.     Standard of Review

"A trial court has broad discretion to admit or exclude evidence during a criminal trial, and error occurs only when there is a clear abuse of this discretion." *State v. Hartman*, 488 S.W.3d 53, 57 (Mo. banc 2016). An abuse of discretion occurs when the trial court's "ruling is clearly against the logic of the circumstances before it and when the ruling is so arbitrary and unreasonable as to shock our sense of justice and indicate a lack of careful consideration." *State v. Rivers,* 439 S.W.3d 862, 865 (Mo. App. E.D. 2014). "We will only reverse a conviction if the error was so prejudicial that it deprived the defendant of a fair trial." *State v. Washington*, 512 S.W.3d 118, 122 (Mo. App. E.D. 2017).

## III.     Discussion

In his sole point on appeal, Defendant claims that the trial court erred in sustaining the State's motion in limine precluding Defendant from asking questions about Victim's prostitution.

---

[4] Defendant was acquitted of the kidnapping in the first degree charge.

5

Defendant claims this error deprived him of the right to present a meaningful defense because that evidence was relevant. Specifically, Defendant asserts that such evidence would have shown that Victim sustained her injuries from another person while she was prostituting. Defendant also argues that he should have been able to question Victim on cross-examination about her working as a prostitute because this issue was central to her credibility. Defendant's arguments are without merit.

"To be admissible, evidence must be both logically and legally relevant." *State v. Drago*, 531 S.W.3d 627, 630 (Mo. App. E.D. 2017). "Evidence is logically relevant if it tends to make the existence of a material fact more or less probable." *State v. Donovan,* 539 S.W.3d 57, 70 (Mo. App. E.D. 2017). Evidence is legally relevant if its probative value outweighs the evidence's costs, such as "the dangers of unfair prejudice, confusion of the issues, undue delay, misleading the jury, waste of time, or needless presentation of cumulative evidence." *Id.* at 70–71.

"Generally, the credibility of witnesses is always a relevant issue." *State v. Austin*, 411 S.W.3d 284, 289 (Mo. App. E.D. 2013). But this Court has noted that "[o]nly in very limited circumstances is evidence of the character of a crime victim relevant and admissible." *State v. Clark*, 747 S.W.2d 197, 200 (Mo. App. E.D. 1988). "The most common methods of impeaching a witness involve the admission of evidence regarding the following: the witness's incapacity or ability to perceive or remember; prior convictions; bias, interest, or prejudice; prior inconsistent statements of the witness; and the witness's reputation for truthfulness and veracity." *State v. Eisele,* 414 S.W.3d 507, 517 (Mo. App. E.D. 2013). "However, the trial court, in the exercise of its discretion, can limit the admission of evidence adduced through these methods if the prejudicial value of the evidence outweighs its probative value." *Austin*, 411 S.W.3d at 289.

6

In this case, the trial court excluded evidence that Victim was a prostitute. Upon review of the record, we conclude that such exclusion was not an abuse of discretion. Victim testified that she "periodically left and went out to the streets," and when she returned, Defendant wanted to know "every single detail." Victim also testified Defendant assaulted her because he was not satisfied with her account of sexual activities with other men. The trial court properly barred Defendant from asking Victim specific questions about her engaging in prostitution. *See State v. Wilkins*, 229 S.W.3d 204, 209–10 (Mo. App. S.D. 2007) (holding that "[e]vidence that victim worked as an exotic dancer and prostitute was irrelevant and the trial court did not abuse its discretion in excluding it"). Also, Victim's own testimony concerning Defendant's inquiries regarding her interactions with other men, which led to the assault, allowed the jury to potentially infer that she was a prostitute.[5] Further, it was well within the trial court's discretion to preclude any evidence relating to Victim being a prostitute. *See State v. Taylor,* 134 S.W.3d 21, 25 (Mo. banc 2004) (stating that "[t]rial courts retain broad discretion in deciding the permissible scope of cross-examination").

Defendant has failed to demonstrate that evidence of Victim engaging in prostitution was legally or logically relevant to the charges against Defendant. *See Drago,* 531 S.W.3d at 630. Defendant only makes unsubstantiated allegations that Victim lied about the assault, arguing that Victim received her injuries from another person while she was prostituting. We find such claims unpersuasive, as those arguments are tied directly to the jury's determination of whether it found Victim's testimony (regarding Defendant causing Victim's injuries) to be credible. *See Donovan,* 539 S.W.3d at 72 (stating that the jury is able to determine a witness's credibility, and we will not reweigh such credibility determinations on appeal).

---

[5] Victim testified that Defendant wanted more specific details about "how tall was the guy; what did the guy look like, and what was he driving." She also testified that she "periodically left and went out to the streets."

Additionally, Defendant contends that evidence of Victim's reputation as a prostitute would discredit Victim on cross-examination. The Supreme Court of Missouri has held that "the credibility of a witness in a criminal case cannot be impeached by showing that his or her reputation for morality is bad, but such an attack must be addressed directly to his or her reputation for truth and veracity." *State v. Curry*, 372 S.W.2d 1, 6 (Mo. banc 1963). This Court has continued to recognize that "the credibility of a witness cannot be attacked … by showing that her general moral character is bad." *State v. Adams*, 51 S.W.3d 94, 101 (Mo. App. E.D. 2001). When attacking a witness's credibility, "[b]ad moral character and character for truth and veracity are not synonymous." *State v. Allison,* 326 S.W.3d 81, 92 (Mo. App. W.D. 2010).

Here, Defendant was able to impeach Victim's credibility on cross-examination with evidence of prior acts of lying and inconsistent statements. Victim testified that she lied on several occasions to hospital staff and police officers about details of the assaults (saying she was in a bar fight and providing false contact information to the police officers). On the relevant dates in question, she testified to being on heroin before and after going to the hospital, as well as staying up all night with Defendant smoking methamphetamine. The trial court allowed Defendant to cross-examine Victim on her drug use on the dates the assaults occurred, but precluded Defendant from asking about her activities as a prostitute. Victim's alleged engagement in prostitution is unrelated to her reputation for truthfulness and veracity, and thus has no bearing on her credibility as a witness. *See State v. Cox,* 352 S.W.2d 665, 673 (Mo. banc 1961) (holding that the credibility of the State's witness could not be impeached by questions tending to show that she was a prostitute or lived by immoral means because such questions did not directly address her "reputation for truth and veracity"). The record reflects that Defendant was able to attack Victim's credibility and impeach her through her own testimony and evidence

8

of inconsistencies in her statements to the hospital staff and police officers, as well as the veracity of those statements while under the influence of heroin and methamphetamine.

Therefore, we conclude that Defendant has failed to show the trial court abused its discretion by precluding questions about Victim's activities as a prostitute. Defendant has also failed to prove that the trial court's ruling was so prejudicial that it deprived him of a fair trial because the jury was given an opportunity to hear about Victim's many sexual partners, her drug use, and several instances of her lying.

Defendant's point on appeal is denied.

## IV. Conclusion

The judgment of the trial court is affirmed.

_____
Colleen Dolan, Judge

Kurt S. Odenwald, P.J., concurs.
Gary M. Gaertner, Jr., J., concurs.

9