

# In the Missouri Court of Appeals
# Eastern District

## DIVISION FOUR

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED110037 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court of |
| | ) | St. Charles County |
| vs. | ) | 1611-CR00696-02 |
| | ) | |
| ORLANDO KIM FERGUSON, II, | ) | Honorable Jon A. Cunningham |
| | ) | |
| Appellant. | ) | Filed: September 26, 2023 |

Thomas C. Clark, II, C.J., James M. Dowd, J., and John P. Torbitzky, J.

## Opinion

Appellant Orlando Ferguson appeals the convictions at his June 2021 retrial on two counts of first-degree statutory sodomy and one count of first-degree child molestation arising from acts he committed against victim, A.R., between January 21, 2008 and January 20, 2013. At his first trial in 2017, a jury convicted Ferguson of those same crimes but this Court overturned those convictions in *State v. Ferguson*, 568 S.W.3d 533 (Mo. App. E.D. 2019).

Ferguson asserts three points of error. First, Ferguson argues the trial court plainly erred when it denied his motion to dismiss based on the Double Jeopardy Clause. In that motion, Ferguson claimed that the State, fearing an acquittal at the first trial due to the wholly insufficient evidence of Ferguson's guilt, adduced improper evidence for the knowing and intentional purpose of goading the defense into requesting a mistrial since double jeopardy

would not apply after a mistrial but would apply after such an acquittal. We deny this point because Ferguson failed to show that the State's trial conduct was done with the intent to goad him into requesting a mistrial.

Second, Ferguson claims the trial court plainly erred in failing to *sua sponte* exclude from evidence the statement to A.R. by Dr. Anita Hampton, the school counselor to whom A.R. reported Ferguson's abuse, that A.R.'s mother "would believe her" because the testimony invaded the province of the jury as an improper comment by one witness on the credibility of another witness. We deny this point as well because Dr. Hampton's testimony as a fact witness to the conversation between her and A.R. at the time of A.R.'s disclosure of Ferguson's abuse did not invade the province of the jury. Moreover, the record supports a finding that counsel did not object as a matter of trial strategy.

Third, Ferguson claims, and the State concedes, the trial court plainly erred in ordering Ferguson's two statutory sodomy sentences to run consecutively based on its erroneous belief that the law required so. We agree and reverse and remand for re-sentencing for the limited purpose to decide whether to run the statutory sodomy charges consecutively or concurrently.

**Background**

In 2005, Ferguson and A.R.'s Mother (Mother) began a relationship. Early in their relationship, Mother learned she was pregnant with A.R. from a previous relationship. In January 2006, A.R. was born, and in September 2007, Mother and Ferguson married. Throughout the marriage, Ferguson, Mother, A.R., and A.R.'s sibling moved in and out of several apartments and family members' homes until Ferguson and Mother separated and later divorced in April 2013.

In February 2016, while in fourth grade, A.R. attended a sexual abuse lecture given to her class. During the presentation, A.R. began to sob and approached school counselor Dr. Anita Hampton telling her "it happened to me." Dr. Hampton called Mother and then made a hotline[1] call to the Children's Division of the Missouri Department of Social Services. A.R. then met with Michelle Stille (Stille), a forensic interviewer with the Child Center in Wentzville, Missouri. A.R. identified to Stille four instances of abuse by Ferguson that occurred while he and Mother were married. In August 2017, Ferguson was charged with two counts of first-degree statutory sodomy and one count of first-degree child molestation.

The First Trial

At the first trial which took place in August 2017, the State called Dr. Hampton who testified she had "[n]o doubt at all" about what A.R. told her or whether "this had actually happened to her." For her part, Stille testified that A.R.'s responses to her questions were "fairly typical of kids that tend to not be suggestible." It was on the basis of this testimony that we reversed Ferguson's convictions and ordered a retrial in *Ferguson*, 568 S.W.3d at 533. In addition, after the trial court had granted Ferguson's motion in limine to exclude any evidence of uncharged acts of domestic violence on the part of Ferguson, Mother testified that she sometimes kept the children "because [she] was physically abused." Ferguson claims in this appeal that the foregoing testimony was part of the intentional scheme by the State to trigger a mistrial and that therefore double jeopardy should have barred his retrial.

The jury in the first trial found Ferguson guilty on all counts. Ferguson appealed those convictions and this Court reversed and remanded for a new trial in *Ferguson*, 568 S.W.3d at

---

[1] Dr. Hampton, as a mandatory reporter pursuant to § 210.115 RSMo, was required to report instances of abuse reported to her.

536.[2]  In his first appeal, Ferguson did not raise the issue of prosecutorial misconduct that he does here.

<u>The Second Trial</u>

Before the retrial, Ferguson filed his motion to dismiss in which he raised the double jeopardy argument that is the subject of his first point on appeal here.

The second trial took place in June 2021. Dr. Hampton again testified that A.R. came into the hallway crying and told Dr. Hampton, "it happened to me," and that she did not want Dr. Hampton to tell Mother. A.R. said she was afraid Ferguson would kill her for disclosing the abuse and that Mother would not believe her. Dr. Hampton then testified that she told A.R. "your mom will believe you" and that A.R.'s mother said "I believe you" upon picking A.R. up from the presentation.

Ferguson was again found guilty on all counts and on October 4, 2021, the court sentenced to ten years in prison on each statutory sodomy conviction ordering those sentences to run consecutively and to five years on the child molestation conviction to run concurrently for a total of twenty years. This appeal follows.

**Standard of Review**

Under certain circumstances, we may review unpreserved errors under our plain error standard of review. *See State v. Speed*, 551 S.W.3d 94, 97 (Mo. App. W.D. 2018) (citing *State v. Clay*, 533 S.W.3d 710, 718 (Mo. banc 2017)); Rule 30.20. Rule 30.20 states in relevant part that "[w]hether briefed or not, plain errors affecting substantial rights may be considered in the

---

[2] In that appeal, we found the trial court abused its discretion in allowing Dr. Hampton to testify that she had no doubts about A.R.'s allegations and in allowing Stille to provide particularized expert testimony that commented on A.R.'s credibility. *Ferguson,* 568 S.W.3d at 546. In addition, we affirmed an evidentiary ruling by the trial court which is not relevant to this appeal. *Id*.

discretion of the court when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." *See Speed*, 551 S.W.3d at 98 (citing *State v. Taylor*, 466 S.W.3d 521, 533 (Mo. banc 2015).

Plain error review is a two-step process. *State v. Baumruk*, 280 S.W.3d 600, 607 (Mo. banc 2009). First, we must determine whether the claim of error "facially establishes substantial grounds for believing that 'manifest injustice or miscarriage of justice has resulted.'" *Id.* (quoting *State v. Brown*, 902 S.W.2d 278, 284 (Mo. banc 1995)); *State v. McKay*, 459 S.W.3d 450, 455-56 (Mo. App. E.D. 2014); Rule 30.20. Not every prejudicial error, however, constitutes plain error, as plain errors are "evident, obvious, and clear." *Id.* If the claim of plain error facially establishes grounds for believing that manifest injustice or a miscarriage of justice resulted, we may elect to exercise our discretion and proceed to the second step to consider whether or not a miscarriage of justice or manifest injustice will occur if the error is left uncorrected. *Id*; *State v. Smith*, 370 S.W.3d 891, 894 (Mo. App. E.D. 2012).

In general, the party seeking review of a constitutional issue must raise the issue at the earliest possible opportunity. *State v. Liberty*, 370 S.W.3d 537, 546 (Mo. banc 2012) (citing *State v. Wickizer*, 583 S.W.2d 519, 523 (Mo. banc 1979)). However, because the right to be free from double jeopardy is a "constitutional right that goes 'to the very power of the State to bring the defendant into court to answer the charge brought against him,' *id*. (quoting *Blackledge v. Perry*, 417 U.S. 21, 30 (1974)), a double jeopardy violation that can be determined from the face of the record is entitled to plain error review even if the defendant failed to preserve the issue." *Id*. (quoting *State v. Neher*, 213 S.W.3d 44, 48 (Mo. banc 2007)).

**Discussion**

In Point I, Ferguson claims the trial court plainly erred in denying his motion to dismiss the charges against him because it subjected him to double jeopardy. Again, Ferguson argues that because the State anticipated an acquittal, which would bar a retrial, the State intentionally sought to goad the defense into requesting a mistrial, which would not bar a second trial, by eliciting the improper testimony during the first trial of its two expert witnesses regarding the credibility of A.R. and by improperly attempting to elicit Mother's testimony that Ferguson had abused her.

"The double jeopardy clause of the fifth amendment of the U.S. Constitution protects a criminal defendant from repeated prosecutions for the same offense." *State v. Willers*, 785 S.W.2d 88, 90 (Mo. App. S.D. 1990). "Under the federal and Missouri constitutions, if a conviction is reversed as a result of trial error rather than insufficient evidence, double jeopardy principles do not bar the defendant's retrial."[3] *Liberty*, 370 S.W.3d at 537. In the mistrial context, the "[c]ircumstances under which such a defendant may invoke the bar of double jeopardy in a second effort to try him are limited to those cases in which the conduct giving rise to the successful motion for a mistrial was intended to provoke the defendant into moving for a mistrial." *Oregon v. Kennedy,* 456 U.S. 667, 679 (1982). Ferguson has the burden to prove the State's intent. *Willers* 785 S.W.2d at 90.

In *State v. Barton*, 240 S.W.3d 693 (Mo. banc 2007), the defendant claimed double jeopardy barred his retrial because of prosecutorial misconduct in the first trial consisting of the

---

[3] The Double Jeopardy Clause of the Missouri Constitution guarantees that no person shall "be put again in jeopardy of life or liberty for the same offense, after being once acquitted by a jury." Mo. Const. art. 1, § 19.

failure to disclose a witness's criminal history and aliases, the failure to correct the witness's perjury, and the failure to disclose the witness's prior forgery charge. *Id*. at 700-701. The court found that a retrial of Barton for murder in the first degree was not barred on double jeopardy grounds. *Id.* at 702. After noting that the only evidence regarding the State's intent would be "an inference from the misconduct itself," the Court concluded that "the fact of prosecutor's misconduct alone does not prove his intent to prevent an acquittal, much less that he believed an acquittal was likely to occur, and his misconduct may just as well be attributed to poor judgement." *Id*. at 702.

Here, Ferguson has failed to show that the improper testimony by the State's expert witnesses, which resulted in Ferguson gaining a new trial after this Court overturned his original convictions, subjected him to double jeopardy. Like *Barton*, the only evidence in this case of the State's intent would be "an inference from the misconduct itself," which is insufficient. *Id*. And we note that no mistrial was even requested here. "[P]rosecutorial conduct that might be viewed as harassment or overreaching, even if sufficient to justify a mistrial on defendant's motion . . . does not bar retrial absent intent on the part of the prosecutor to subvert the protections afforded by the Double Jeopardy Clause." *Kennedy*, 456 U.S. at 675-676.

Likewise, Ferguson has failed show that Mother's testimony that she had been physically abused was part of some nefarious plan on the part of the State to avoid the impact of the Double Jeopardy Clause. The defense, not the State, called Mother as its witness and elicited the subject of the testimony of which it now complains when it asked Mother why she did not let Ferguson see A.R. and A.R.'s sibling. Only then, during its cross-examination of Mother, did the State ask if she was scared for herself and A.R. in the event Ferguson posted bond and was released. The prosecutor then asked if Mother had twice gotten orders of protection against Ferguson for her

and A.R. but the court sustained defense counsel's objection to that testimony. We find that this record fails to demonstrate an intent on the part of the State to trigger a mistrial. Point denied.

## II.

In Point II, Ferguson claims the trial court plainly erred in failing *sua sponte* to exclude Dr. Hampton's testimony that she told A.R. that Mother would believe A.R. about the sexual abuse because it invaded the province of the jury by improperly vouching for the credibility of A.R.'s statement.

"When determining the admissibility of opinion testimony, expert witnesses should not be allowed to give their opinion as to the veracity of another witness's statement, because in so doing, they invade the province of the jury." *State v. Churchill*, 98 S.W.3d 536, 538–39 (Mo. banc 2003).

> In cases involving the sexual abuse of a child, there are typically two types of expert testimony that give rise to a challenge: general and particularized. General testimony describes a "generalization" of behaviors and other characteristics commonly found in those who have been the victims of sexual abuse. Particularized testimony is that testimony concerning a specific victim's credibility as to whether they have been abused. The trial court has broad discretion in admitting general testimony, but when particularized testimony is offered, it must be rejected because it usurps the decision-making function of the jury and, therefore, is inadmissible.

*Id*.

"*Sua sponte* action should be exercised only in exceptional circumstances." *State v. Drewel*, 835 S.W.2d 494, 498 (Mo. App. E.D. 1992). A choice to object or not object must be analyzed in the context of the entire trial record. *State v. D.W.N.*, 290 S.W.3d 814, 820 (Mo. App. W.D. 2009).

Ferguson relies on *State v. Williams*, 858 S.W.2d 796 (Mo. App. E.D. 1993). In *Williams*, an expert in child trauma testified that sexual abuse victims generally do not lie and

8

that the victim's spontaneous identification of the defendant as her abuser to a nurse demonstrated that it was in fact the defendant who sexually abused her. *Id.* at 800. This Court reversed under plain error review because the expert's testimony "manifestly prejudiced appellant by usurping the province of the jury." *Id*. at 801.

*Williams* is distinguishable from this case. First, unlike the expert in *Williams,* Dr. Hampton was not only an expert witness at trial, but she was also a key fact witness to A.R.'s disclosure. Moreover, the expert in *Williams* directly and specifically vouched for the victim's veracity while Dr. Hampton's statement to A.R. at the time of her disclosure of the abuse that Mother would believe her, helped the jury understand A.R.'s unwillingness to come forward since the defense had raised the issue of A.R.'s delayed disclosure. In addition, unlike Dr. Hampton's testimony, the expert in *Williams* gave general opinions about the tendencies of abuse victims and then particularized them to the victim herself which is improper under the foregoing mandates of *Churchhill,* 98 S.W.3d at 538–39. Thus, we find that Dr. Hampton's testimony in this regard did not invade the province of the jury. *Id.*

Moreover, the record indicates that the defense strategically withheld objection to the testimony to bolster its argument that A.R. fabricated the abuse allegations to earn her Mother's affection and support. A trial court does not plainly err when it fails to prohibit *sua sponte* the introduction of objectionable evidence when the totality of the circumstances reflects a clear indication that trial counsel strategically chose not to object to the evidence. *D.W.N.*, 290 S.W.3d at 825. Here, Ferguson's counsel employed Dr. Hampton's testimony during his cross-examination of forensic interviewer Stille and during closing argument to suggest that Dr. Hampton's words and actions motivated A.R. to fabricate Ferguson's crimes in order to receive Mother's affection and support.

Ferguson seeks to excuse his own use of Dr. Hampton's testimony with his reliance on *State v. Hollowell*, 643 S.W.3d 329 (Mo. banc 2022). There, the State elicited an arguably inadmissible hearsay statement during direct examination. *Id*. at 336. Defense counsel objected, but then later elicited the same testimony on cross-examination. *Id*. The Court held that defense counsel's decision to employ the same testimony during cross-examination of the same witness in an effort to "break the force" of the improper evidence, did not waive the earlier objection. *Id*.

But *Hollowell* is readily distinguishable because here Ferguson did not object to Dr. Hampton's testimony. Ferguson allowed Dr. Hampton's testimony, in our judgment strategicially, and then used the testimony not to "break the force" against the same witness, but in cross-examination of a different witness and in closing argument in an effort to argue A.R. made up the abuse allegations against Ferguson. Simply put, we will not convict the trial court of plain error under these circumstances for failing to "assist counsel in the trial of a lawsuit" on a *sua sponte* basis. *Drewel*, 835 S.W.2d at 498. Point II is denied.

## III.

In Point III, Ferguson argues, and the State concedes, that the trial court plainly erred in ordering Ferguson's two sentences for statutory sodomy to run consecutively based on its mistaken belief, a belief shared by the State and the defense, that the law required it to do so.[4]

This notion of the law was incorrect. Inasmuch as Ferguson's statutory sodomy crimes occurred between January 21, 2008 and January 20, 2013, the pre-August 28, 2013 version of section 558.026 applied to Fergusons' sentencing in this case and that statute gave the trial court

---

[4] Before sentencing, the State and defense counsel assured the trial court that the applicable law required the statutory sodomy sentences to run consecutively. After sentencing, the court asked Ferguson if his counsel had explained to him that his statutory sodomy convictions "were mandated to have consecutive sentences."

"maximum discretion" to decide whether to run the sentences for statutory sodomy consecutively or concurrently. *Williams v. State*, 800 S.W.2d 739, 739 (Mo. banc 1990). As amended, effective August 28, 2013, section 558.026 *required* consecutive sentences for statutory sodomy convictions.

"When the record demonstrates that the trial court imposed consecutive sentences instead of concurrent sentences based on a misunderstanding of the law, such conduct is plain error and the defendant is entitled to re-sentencing." *State v. Elam*, 493 S.W.3d 38, 43 (Mo. App. S.D. 2016). We conclude therefore that the trial court's misunderstanding of the law in this context constitutes plain error which requires that we remand for re-sentencing so that the trial court may exercise its discretion as mandated by section 558.026 for the limited purpose of deciding if the two statutory sodomy sentences should run concurrently or consecutively.[5]

### Conclusion

Accordingly, we affirm the convictions in this case and affirm the sentences in this case but remand for the limited purpose to decide whether to run the two statutory sodomy sentences consecutively or concurrently.

_____
James M. Dowd, Judge

Thomas C. Clark, II, C.J., and
John P. Torbitzky, J. concur.

---

[5] In this regard, we follow the decisions in *State v. Jones*, 534 S.W.2d 556, 558, (Mo. App. 1976) and *State v. McCollum*, 527 S.W.2d 710, 714 (Mo. App. 1975) which in similar circumstances limited the trial court's decision on remand to solely whether the sentences imposed in the original sentencing should be ordered to run concurrently or consecutively.

11